606 F.2d 420
 20 Fair Empl.Prac.Cas. 1186,
20 Empl. Prac. Dec. P 30,270
Frank L. CARSON, Lawrence Hatcher, Stuart E. Mines, Appellants,
v.
AMERICAN BRANDS, INC., t/a The American Tobacco Company;
Local 182, TobaccoWorkers International, Tobacco
Workers International Union, Appellees.
 No. 77-2260.
 United States Court of Appeals,
Fourth Circuit.
 Submitted En Banc June 5, 1979.
Decided Sept. 14, 1979.
 
 John W. Scott, Jr., Fredericksburg, Va., Henry L. Marsh, III, William H. Bass, III, Randall G. Johnson, Hill, Tucker & Marsh, Richmond, Va., for appellants; Jack Greenberg, New York City, Barry L. Goldstein, Washington, D. C., on brief.
 D. Eugene Webb, Jr., Henry T. Wickham, Mays, Valentime, Davenport & Moore, Richmond, Va., on brief for American Brands, Inc., t/a The American Tobacco Company.
 Jay J. Levit, Stallard & Levit, Richmond, Va., James F. Carroll, New York City, on brief for Local 182, Tobacco Workers International Union, Tobacco Workers International Union.
 Before HAYNSWORTH, Chief Judge and WINTER, BUTZNER, RUSSELL, WIDENER, HALL and PHILLIPS, Circuit Judges.
 K. K. HALL, Circuit Judge:
 
 
 1
 Plaintiffs seek an interlocutory appeal under 28 U.S.C. § 1292(a)(1) of the district court's refusal to enter a consent decree agreed to by the named parties in a Title VII class action.
 
 
 2
 The suit is based on claims of race discrimination and is brought against employer and union on behalf of black workers and black applicants for employment at an American Tobacco Company plant in Richmond, Virginia. The decree would grant money damages and hiring and seniority preferences to black employees and would set a goal requiring the employer to give preference to blacks in hiring for supervisory positions until a certain number of qualified blacks were employed. The decree was negotiated by representative plaintiffs, and it provides for notice to all class members.
 
 
 3
 The named plaintiffs contend that this relief is injunctive in nature, and, because the district court refused to enter the decree, its order is immediately appealable under § 1292(a)(1) as a denial of injunctive relief. We disagree.
 
 
 4
 The district court's order refusing entry of the decree does not deny any relief, whatever its nature. It merely requires the parties to either revise the decree or proceed with the case by trial or motions for summary judgment. The immediate consequence of the order is continuation of the litigation and, because the merits of the decree can be reviewed following final judgment, we think it is not an appealable order under § 1292(a)(1). Accordingly, we dismiss the appeal.
 
 I.
 
 5
 In Flinn v. FMC Corporation, 528 F.2d 1169 (4th Cir. 1975), Cert. denied, 424 U.S. 967, 96 S.Ct. 1462, 47 L.Ed.2d 734 (1976), we heard the appeal of individual class plaintiffs alleging that the district court abused its discretion by entry of a consent decree in a Title VII sex discrimination class action. There, the overwhelming majority of class members had voted to adopt the decree, and the district court entered it on the "eve of trial." With scholarly care, Judge Russell surveyed various interests supporting entry of the decree and posited the rule that, when a district court is presented with a consent decree, it should view the merits of the decree in light favorable to its entry. That is, it should, without requiring technical perfection or legal certitude, determine whether the law and the facts of record Arguably support its terms. Under this standard, he identified factors which the district court should consider in exercising its discretion. These included "the extent of discovery that has taken place, the stage of the proceedings, the want of collusion in the settlement, and the experience of counsel who may have represented plaintiffs in the negotiation." Id. at 1173.
 
 
 6
 Plaintiffs argue that the district court erred in failing to consider the proposed decree under the liberal standards of Flinn[1] and that its refusal to enter the decree is immediately appealable. Although we think the district court should have reviewed the proposed decree under Flinn, we do not think its refusal to approve the decree is a matter properly within our jurisdiction prior to final judgment.
 
 
 7
 In Flinn, the district court's Entry of the decree terminated the action, whereas here the district court's order refusing it has no such effect it continues the proceedings, making our review of it an interlocutory appeal.
 
 II.
 
 8
 As a general rule appeals of right from interlocutory trial court decisions are not favored. 28 U.S.C. § 1291. Baltimore Contractors, Inc. v. Bodinger, 348 U.S. 176, 75 S.Ct. 249, 99 L.Ed. 233 (1955); Coopers & Lybrand v. Livesay, 437 U.S. 463, 98 S.Ct. 2454, 2459, 57 L.Ed.2d 351 (1978); Gardner v. Westinghouse Broadcasting Co., 437 U.S. 478, 98 S.Ct. 2451, 2453, 57 L.Ed.2d 364 (1978). They disrupt the trial process, slow the course of litigation and create unnecessary multiple appeals. A single appeal following final judgment facilitates orderly litigation and comprehensive appellate review of all issues presented, many of which are dependent upon or related to other issues in the suit. After final judgment, the fact issues have been settled in the appropriate forum, and appellate review can be dispositive of all issues in the case. See, Coopers & Lybrand v. Livesay, 98 S.Ct. at 2460-61.
 
 
 9
 In the interests of justice, appeals of right from interlocutory orders are allowed when the delay in hearing an appeal after final judgment poses some irreparable consequence, Gardner v. Westinghouse Broadcasting Co., 98 S.Ct. at 2453, or when the issue to be determined is sufficiently collateral to the ongoing litigation that no disruption of the trial process will attend early appellate review, See Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 546-47, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949); Coopers & Lybrand v. Livesay, 98 S.Ct. at 2459.
 
 
 10
 Special statutory exceptions to the final judgment rule are set forth in 28 U.S.C. § 1292(a). Plaintiffs argue that characterization of the refused relief as "injunctive" is sufficient to meet the plain terms of § 1292(a)(1), which reads in pertinent part,
 
 
 11
 The courts of appeals shall have jurisdiction of appeals from: (1) Interlocutory orders of the (district courts) granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions . . . .
 
 
 12
 But a mere labeling of relief is not sufficient. See City of Morgantown, W. Va. v. Royal Ins. Co., 337 U.S. 254, 258, 69 S.Ct. 1067, 93 L.Ed. 1347 (1949). Courts look to the consequence of postponing appellate review following final judgment and weigh the need for immediate appeal against the important judicial interests militating against piecemeal review. See Gardner v. Westinghouse Broadcasting Co., 98 S.Ct. at 2454; Coopers & Lybrand v. Livesay, 98 S.Ct. at 2460. This test is applied to appeals in class actions as well as to those in ordinary litigation.[2] Under this test, we find no appeal of right from orders refusing consent decrees at any time before final judgment.
 
 III.
 
 13
 The consequence of the district court's order is not irreparable. No right is forfeited as a result of delayed review. Here, injunctive relief was not finally denied; it was merely not granted at this stage in the proceedings. See Liberty Mutual Insurance Company v. Wetzel, 424 U.S. 737, 744-45, 96 S.Ct. 1202, 47 L.Ed.2d 435 (1976). Like the denial of a motion for summary judgment which, if granted, would include injunctive relief, the denial of this consent decree decided "only one thing that the case should go to trial." Switzerland Cheese Association, Inc. v. E. Horne's Market, Inc., 385 U.S. 23, 25, 87 S.Ct. 193, 195, 17 L.Ed.2d 23 (1966).
 
 
 14
 In Gardner v. Westinghouse Broadcasting Co., 437 U.S. 478, 98 S.Ct. 2451, 57 L.Ed.2d 364 (1978), the Supreme Court held that the pretrial denial of class certification in a Title VII case was not appealable under § 1292(a)(1) as a denial of injunctive relief. In that case, which involved allegations of sex-based discrimination, the complainant sought broad injunctive relief for the class similar to the relief proposed in the decree before us. The Court reasoned that the pretrial order denying class certification was not one of irreparable consequence since it could be reviewed at any stage of the proceedings either before or after final judgment, did not affect the complainant's personal claim for injunctive relief, and did not pass on the legal sufficiency of any claim for injunctive relief. Id. 98 S.Ct. at 2453-54 and notes 7, 8 and 9 (citing Switzerland Cheese ).
 
 IV.
 
 15
 The analogous consequences of a district court's disapproval of a settlement in a class action and its refusal to grant summary judgment were considered by the Second Circuit in Seigal v. Merrick, 590 F.2d 35 (2nd Cir. 1978). The issue there was whether, in a stockholder derivative action, the court's order refusing settlement was appealable before final judgment.
 
 
 16
 Relying upon the analysis in Coopers & Lybrand v. Livesay, 437 U.S. 463, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978), a case decided the same day as Gardner, the Seigal court discussed the judicial and private interests always present where the rights of represented and unrepresented individuals may be compromised by the court's approval of a settlement. The court explained the purpose of requiring class action settlements to be presented to district courts under Fed.R.Civ.Proc. 23.1.
 
 
 17
 (A)n order disapproving a settlement . . . is based, in part, upon an assessment of the merit of the positions of the respective parties, and permits the parties to proceed with the litigation or to propose a different settlement.
 
 
 18
 A settlement in an ordinary civil litigation is normally the sole concern of the parties. In stockholder derivative actions, on the other hand, because of the vicarious representation involved, the court has a duty to perform before an action can be "settled." . . . This approval cannot be a rubber stamp adoption of what the parties alone agree is fair and equitable.
 
 
 19
 Seigal v. Merrick, 590 F.2d at 37-38. The court pointed out that disallowing appeals of right from each refusal to enter a settlement had the practical effect of enhancing the district court's control over the litigation.
 
 
 20
 (T)he denial of one compromise does not necessarily mean that a "sweetened" compromise may not be approved. The management of a derivative suit gives the trial judge a chance not only to disapprove a compromise but to edge the parties toward more equitable terms.
 
 
 21
 Id. at 39.
 
 
 22
 The Seigal court reasoned that a rule allowing appeals of right from orders refusing entry of settlements was unjustified. It would interrupt the litigation and thrust appellate courts indiscriminately into the trial process without appreciable benefit to class members whose interests were to be protected.
 
 
 23
 Therefore, the court concluded that such an order was not appealable before final judgment. See, Note, "Recent Developments: Appealability of District Court Orders Disapproving Proposed Settlements in Shareholder Deprivative Suits," 32 Vand.L.R. 985, 998-1001 (1979). Contra, Norman v. McKee, 431 F.2d 769, 772-74 (9th Cir. 1970) Cert. denied, ISI v. Meyers, 401 U.S. 912, 91 S.Ct. 879, 27 L.Ed.2d 811 (1971).
 
 V.
 
 24
 We think this Title VII interlocutory appeal should be dismissed. Our review of this pretrial order has halted the litigation for over two years pending review of the district court's exercise of discretion. Given this disruption and the difficult burden on appeal of demonstrating an abuse of discretion, plaintiffs have identified no consequence requiring appellate review before final judgment. We perceive none. Instead, we think our review is best left to follow final judgment.
 
 
 25
 Under the Flinn analysis, the named parties may present a proposed decree to the district court in any form and at any stage in the proceedings. If one decree is refused another may be proposed. At any time the district court can reconsider its refusal to enter a decree. See Cohen v. Beneficial Industrial Loan Corporation, 337 U.S. at 547, 69 S.Ct. 1221.
 
 
 26
 When a district court objects to the terms of a decree, alternative provisions can be presented, and perhaps a disapproved decree may be entered with further development of the record. If the district court refuses a decree because it is presented too early in the litigation, it may be later approved, perhaps following a decisive vote by class members. Whatever the district court's reasons for refusing a decree, appeals of right from those refusals would encourage an endless string of appeals and destroy the district court's supervision of the action as contemplated by Fed.R.Civ.Proc. 23(e).
 
 
 27
 A rule allowing review after final judgment, on the other hand, facilitates the district court's supervision of the litigation and enhances appellate review. The district court's consideration and reconsideration of various proposed decrees in whatever form and whenever presented during the litigation can be reviewed effectively after final judgment. A single appellate review of all alternative proposals would be dispositive of the Flinn issue.[3] Also, after final judgment, important legal questions would rest on a firm factual setting with the parties arguing the importance of the law and facts as they appeared when the decree was proposed. Where alternative or revised decrees have been presented, the parties could advocate on appeal the alternative most favorable to their positions in light of the law and facts appearing when it was presented. Such argument is vital when appellate courts must authoritatively opine about important unsettled legal issues of the highest social concern in the amorphous context of reviewing a trial court's exercise of discretion.[4] In all, we think the admonition of Judge Clark is apt,A district judge's orders advancing a case to trial ought not to be critically examined and re-examined by the cumbersome method of appeal before he has approached the stage of adjudication. * * * I believe this an intolerable burden for us, an improper and uncertain interference with trial court discretion, and a confusing invitation to indiscriminate appeals in the future all contrary to settled federal law against piecemeal appeals.
 
 
 28
 Peter Pan Fabrics, Inc. v. Dixon Textile Corp., 280 F.2d 800, 805-06 (2nd Cir. 1960). (Judge Clark dissenting).
 
 VI.
 
 29
 In conclusion, the district court's discretionary decision to send the parties to trial, in lieu of granting immediate injunctive relief before the facts are settled, is not a ruling of irreparable consequence. Plaintiffs may proceed to trial with no loss of either their claims for final injunctive relief or their right of appellate review of the Flinn issue. Short of going to trial, the parties may propose alternative decrees to the district court, one of which may be entered. Appellate review of the order is best effected following final judgment. Such review preserves the trial court's exclusive control over the progress of the litigation and facilitates its supervision of the class action.
 
 
 30
 Therefore, we hold that the district court's order refusing entry of the proposed consent decree is not appealable, and, accordingly, the appeal is dismissed.
 
 
 31
 APPEAL DISMISSED.
 
 
 32
 WINTER, Circuit Judge, with whom HAYNSWORTH, Chief Judge, and BUTZNER, Circuit Judge, join, dissenting:
 
 
 33
 In this Title VII class action, the district court declined to approve and to enter a consent decree which the parties had negotiated in settlement of the action. Plaintiffs appeal. Unlike the majority, we think that the order denying approval of the settlement and declining to enter it was appealable. As to the merits, we conclude that in the main the district court abused its discretion in declining to approve and enter the decree. We would require that such approval be given, although we would authorize the district court to require a modification of the decree with respect to the notice to be given certain members of the subclass whose alleged rights are to be abandoned as part of the settlement.
 
 
 34
 We therefore respectfully dissent.
 
 I.
 
 35
 This Title VII class action was brought against the employer, American Brands, Inc. (American) and Tobacco Workers International Union and its Local 182 (union) on behalf of black employees and black persons who sought employment at American's Richmond, Virginia, leaf department. The complaint contained general allegations that defendants denied equal opportunities for hiring, promotion, transfer and on-the-job training for blacks, thus restricting them to lower paying and less desirable jobs, that defendants pay lower wages to blacks for like work than they pay to white employees, that the union has failed to represent blacks fairly, has acquiesced in discrimination against them and has entered into collective bargaining agreements intended to discriminate against them, and that the defendants have disciplined and discharged black employees solely because of their race.
 
 
 36
 After answers were filed, the parties engaged in extensive discovery for a period exceeding one year. The discovery included the taking of nineteen depositions and the analysis of boxes of written material tendered in response to some of the six sets of interrogatories. By March 1, 1977, the scope of the action was restricted; and on that date the district court, pursuant to F.R.Civ.P. 23(b)(2), certified a class consisting of:1. All black persons, whether currently employed or not, who were seasonal employees of American Tobacco Company's Richmond Leaf Plant on or after September 9, 1972; and
 
 
 37
 2. All black persons who applied for seasonal employment at the American Tobacco Company's Richmond Leaf Plant at any time on or after September 9, 1972.
 
 
 38
 The facts, accepted by the district court for the purpose of deciding whether to approve and enter the decree, were that American operates the Richmond Leaf Department for the purpose of processing and storing leaf tobacco. It has two types of employees: seasonal, whose period of employment is between six and nine months each year, and regular, who are employed full-time for the entire year. The union has exclusive bargaining rights for all hourly-paid production unit positions.
 
 
 39
 American employs approximately 150 seasonal employees, All of whom, as of June 2, 1977, were black, and approximately 100 regular employees, of whom 66% Were black. Plaintiffs are not aware of any white individuals who have ever been employed as seasonal employees.
 
 
 40
 Prior to September 1963, the regular job classifications of truck driver, watchman, maintenance storage, and boiler operator at the Leaf Plant were reserved for whites only. As of February 15, 1976, these positions were staffed as follows:
 
 
 41
 POSITION WHITES BLACKS
-------- ------ ------
Truck Drivers 5 4
Watchmen 15 1
Maintenance Storage 1 0
Boiler Operators 0 3
 
 
 42
 Regular employees have the right to obtain any permanent position for which the union has bargaining rights within the Richmond Leaf Department. Seasonal employees have the right to obtain any seasonal position for which the union has bargaining rights within the Richmond Leaf Plant. Seasonal employees may transfer to positions in regular classifications only when no regular employee desires that position. Should the seasonal employee transfer to a regular position, he loses all of his seniority and is treated as a new hire for seniority purposes. Separate seniority rosters are maintained for regular and for seasonal employees.
 
 
 43
 When a seasonal employee transfers to a regular position, he is placed at the bottom of the regular seniority roster irrespective of the number of years he has worked as a seasonal employee with American. This loss of seniority affects his status for promotions, demotions, lay-offs, recalls and vacations, and, in short, the principal terms and conditions of his employment.
 
 
 44
 Since 1971, the vast majority of applicants and new hires at all of American's locations in the Richmond area have been black, as indicated by the following chart:
 
 
 45
 YEAR APPLICANTS NEW HIRES
---- -------------- --------------
 BLACKS WHITES BLACKS WHITES
 ------ ------ ------ ------
1971 97 1 88 1
1972 118 5 97 2
1973 94 4 93 1
1974 71 7 64 2
1975 77 3 22 2
 
 
 46
 The racial composition of the production unit at the Richmond Leaf Department is as follows:
 
 
 47
 REGULAR SEASONAL
YEAR EMPLOYEES EMPLOYEES
---- -------------- --------------
 WHITES BLACKS WHITES BLACKS
 ------ ------ ------ ------
1968 41 52 -- 116
1970 40 59 -- 175
1973 40 56 -- 176
1976 37 57 -- 135
 
 
 48
 Of the 35 supervisory positions at American's Richmond Leaf Department as of April 5, 1976, seven, or 20% Were filled by blacks. Of the 229 persons in hourly paid production unit jobs at the Richmond Leaf Department in that same year, 192, or 84% Were black.
 
 
 49
 The consent decree was negotiated by counsel during the months of February and March, 1977. Agreement was reached less than a week before the trial of the case was scheduled to begin. Counsel were all thoroughly experienced in Title VII class action litigation, including, but not limited to, such suits in the tobacco industry.
 
 
 50
 The proposed consent decree contained five substantive provisions:1. Every current and future regular hourly-paid production employee would be credited with seniority for actual time worked as a seasonal employee. Thus, seasonal employees would not lose seasonal seniority by transferring to regular positions and the seniority deterrence to transfers from seasonal to regular employment would be removed.
 
 
 51
 2. Regular employees who successfully served a probationary period as seasonal employees would not be required to serve another probationary period to become eligible for medical and sick benefits. Again, a deterrence to transfers from seasonal to regular employment was removed.
 
 
 52
 3. In the event that vacancies in hourly-paid permanent production job classifications are not filled by regular production employees, seasonal production employees will be given the opportunity to fill them before there is hiring from the outside. This gives seasonal employees the opportunity to bid on vacancies in regular production jobs, some of which were at one time reserved for whites only, before any outside hiring.
 
 
 53
 4. Seasonal employees shall have the opportunity to bid on vacancies in the watchman job classification prior to hiring from the outside. This provision duplicates "3," except that it is restricted to the watchman classification. The watchman classification was probably given separate treatment because as of February 15, 1976, there had been less black penetration than in any other formerly all-white classification.
 
 
 54
 5. A goal is set for the Leaf Department for the filling of Foreman and Assistant Foreman supervisory positions with qualified blacks until one-third of such positions are filled with blacks. The date of December 31, 1980 is fixed as the date for accomplishment of this goal.
 
 
 55
 With respect to monetary claims of individual members of the class, the consent decree recites that there was no discriminatory hiring and therefore the members of Class 2 (black persons who applied for seasonal employment on or after September 9, 1972, but were not hired) are entitled to no monetary relief. By contrast, those falling into Class 1 may be entitled to monetary relief and the procedures for proving and asserting a claim are specified. Notice of the proposed decree will be given to members of Class 1 with an opportunity for them to object before the decree becomes final. No notice is to be given to members of Class 2 notwithstanding that the decree adversely adjudicates their claim to monetary relief.
 
 
 56
 After all counsel tendered the consent decree, the district court conferred with counsel and required them to file memoranda of facts and of law in support of the decree. After the memoranda were filed and considered, the district court filed its memorandum disapproving the consent decree and declining to enter it.
 
 
 57
 The major premise of the district court's memorandum was that it should neither approve nor enter a consent decree that perpetuates, promulgates or acquiesces in discrimination on the basis of race. The district court then made a general review of the decided cases construing Title VII and some of its legislative history; and after deducing what it thought were applicable general principles, it turned to a consideration of the five substantive provisions of the proposed decree. It disapproved of giving seniority credit for seasonal employment, because seasonal employees have always been black; and therefore the effect of giving seniority credit for seasonal employment will be to give preferential treatment on the basis of race in violation of Title VII. For the same reason, it disapproved of the provision excusing regular employees from a probationary period when they had successfully served a probationary period as seasonal employees. Similarly, the provisions giving seasonal employees a right to bid on vacancies in hourly-paid permanent production job classifications and the watchman classification before hiring from the outside were disapproved as illegal preferential treatment of blacks solely on the basis of race since only blacks were seasonal employees. Finally, the district court construed the goal for filling the supervisory force as an illegal racial quota and disapproved it.
 
 II.
 
 58
 We consider first the question of our jurisdiction. We do so in the light of the congressionally articulate policy to redress discrimination in employment "by informal methods of conference, conciliation, and persuasion." 42 U.S.C. § 2000e-5(b). This policy, in our view, favors settlement of claims of discrimination in employment. When, as here, the parties' settlement of their dispute has been rejected by the district court, there is a compelling reason to review the propriety of the rejection if review is arguably permitted under established appellate jurisdiction.
 
 
 59
 The order from which this appeal is taken is interlocutory. We agree with the majority that there is no right to appeal every interlocutory decision of a district court. However, there are exceptions to this general rule, both judge-made, i. e., Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), and statutory. The significant exception to be considered here is that contained in 28 U.S.C. § 1292(a)(1):
 
 
 60
 The courts of appeals shall have jurisdiction of appeals from:
 
 
 61
 (1) Interlocutory orders of the district courts . . . granting, continuing, modifying, Refusing or dissolving Injunctions, or refusing to dissolve or modify injunctions . . . . (Emphasis added.)
 
 
 62
 It is our view that the order declining to approve the settlement was an order refusing an injunction. As we have earlier set out, the settlement would have required American and the union to take a number of affirmative steps. It would have required that hourly-paid production employees be given seniority for service as seasonal employees; it would have required that such employees be eligible for medical and sick benefits without serving another probationary period; it would have given seasonal employees a preference for employment in certain permanent positions; it would have given seasonal employees a preference over outsiders in bidding for vacancies in the watchman classification; and it would have fixed a goal in the hiring of qualified blacks in the positions of Foreman and Assistant Foreman. The parties themselves termed the proposed consent decree as one "enjoining" American and the union from discriminating against black employees and titled the five affirmative actions that we have described as "Injunctive Relief For the Class."
 
 
 63
 In Lewis v. Tobacco Workers' International Union, 577 F.2d 1135 (4 Cir. 1978), Cert. denied, 439 U.S. 1089, 99 S.Ct. 871, 59 L.Ed.2d 56 (1979), a panel of the court held that an interlocutory order in an employment discrimination case which adopted guidelines proposed by plaintiffs was appealable. Those guidelines required the employer and the union to supply a list of members eligible for back pay, required them to pay interim attorneys' fees, required the development of job descriptions, required that certain transfers of employees not be limited, required the hiring of permanent and seasonal employees, required that employees be advised of vacancies, and required that employment applications remain viable for not less than one year. In rejecting the argument that the order was not appealable because it was not a final order granting relief, the court said:
 
 
 64
 We believe the guidelines, requiring the defendants to act in some instances and forbidding them to act in others, to be an injunction. We do not agree with the plaintiffs' position that the guidelines, although requiring present affirmative action or restraint, are yet unappealable. (Footnote eliminated.)
 
 
 65
 577 F.2d at 1139.
 
 
 66
 Surely Lewis was correctly decided, and surely it is indistinguishable from the instant case. The proposed consent decree was an injunction,[1] and had it been entered it would have been appealable under Lewis. The refusal to enter the proposed consent decree is equally appealable, because § 1292(a)(1) authorizes an appeal from an interlocutory order "refusing" an injunction.
 
 
 67
 We are at a loss to understand why the majority fails to conclude that Lewis decides this case and why the majority holds the order in the instant case non-appealable. Certainly the holding in Seigal v. Merrick, 590 F.2d 35 (2 Cir. 1978), does not support that result. Seigal concerned the settlement of a derivative stockholders' suit. The granting of stock options in exchange for certain cash consideration bears little resemblance to the entry of an injunction. Indeed, in Seigal the only issue litigated was whether the order refusing approval of the settlement was appealable under 28 U.S.C. § 1291 under the collateral order doctrine of Cohen v. Beneficial Industrial Loan Corp., supra.[2] No claim was made that, as here, the order was appealable under 28 U.S.C. § 1292(a)(1).
 
 
 68
 Nor do we think that Gardner v. Westinghouse Broadcasting Co., 437 U.S. 478, 98 S.Ct. 2451, 57 L.Ed.2d 364 (1978), holding that pretrial denial of class certification in a Title VII case is not appealable under § 1292(a)(1), controls here. The rationale of that case is that the order denying certification "could be reviewed both prior to and after final judgment; it did not affect the merits of petitioner's own claim; and it did not pass on the legal sufficiency of any claims for injunctive relief." Id. at 480-81, 98 S.Ct. at 2453. By contrast, if the consent decree in the instant case is not approved now, as a practical matter the propriety of the proposed settlement will not be raised again either in the district court or before us. The consent decree, if entered, would settle finally the rights of the parties, subject only to possible modification at the instance of a dissatisfied member of the class; and, notwithstanding the standard recital that defendants disclaimed liability, it would in actuality hold them to have violated Title VII.
 
 
 69
 Similarly, a holding that the denial of a motion for summary judgment, which if granted would include injunctive relief, is not appealable, Switzerland Cheese Association, Inc. v. E. Horne's Market, Inc., 385 U.S. 23, 87 S.Ct. 193, 17 L.Ed.2d 23 (1966), does not decide this case. "(T)he denial of a motion for summary judgment because of unresolved issues of fact does not settle or even tentatively decide anything about the merits of the claim. It is strictly a pretrial order that decides only one thing that the case should go to trial." Id. at 25, 87 S.Ct. at 195. By contrast, the order appealed from in the instant case does much more; in rejecting the consent decree, the district court relied on conclusions adverse to plaintiffs' claims on the merits conclusions which plaintiffs now ask us to review. Nor is the instant case decided by Liberty Mutual Ins. Co. v. Wetzel, 424 U.S. 737, 96 S.Ct. 1202, 47 L.Ed.2d 435 (1976). There, the district court granted partial summary judgment as to liability in a Title VII employment case, but before an actual injunction was formulated and entered, the employer appealed. The Court held that the order was not appealable under § 1292(a)(1) since no injunction had been issued, nor had an injunction been refused. Significantly, it added that "had (the district court) granted injunctive relief but had not ruled on respondents' other requests for relief, this interlocutory order would have been appealable under § 1292(a)(1)." Id. at 744, 96 S.Ct. at 1207.
 
 
 70
 Thus, we conclude that we have and should exercise appellate jurisdiction.III.
 
 
 71
 Because we would hold that we possess and should exercise appellate jurisdiction, we are brought to the merits of the case.
 
 
 72
 The law of this circuit with reference to the function of the district court in approving or disapproving a settlement of Title VII sex discrimination litigation, as well as our function on appeal, was settled in Flinn v. FMC Corporation, 528 F.2d 1169 (4 Cir. 1975), Cert. denied, 424 U.S. 969, 96 S.Ct. 1462, 47 L.Ed.2d 734 (1976). We think that the same standards apply to settlement of Title VII race discrimination litigation.
 
 
 73
 In Flinn, to summarize Judge Russell's detailed and scholarly opinion, we said that the most important factor that the district court must consider is the strength of the plaintiffs' claims on the merits and that, in making that evaluation, the district court should consider the extent of discovery that has taken place, the stage of the proceedings, the want of collusion in the settlement and the experience of plaintiffs' counsel who negotiated the settlement. These elements are important, Judge Russell wrote, because the completion of discovery ordinarily permits a reasonable evaluation of the merits of a claim, and the opinion of competent counsel, absent a showing of collusion and bad faith, is entitled to great weight. Also to be considered is the attitude of the class members and whether they favor or oppose the settlement. Judge Russell cautioned that while the adequacy of a settlement should be appraised, the district court should not turn its consideration of the settlement into a trial or rehearsal of the trial or make dispositive conclusions on the unsettled legal issues in the case. Finally, Judge Russell called attention to the legislative intent to encourage settlements, expressed in Title VII. 528 F.2d at 1172-74.
 
 
 74
 Although our review is limited to determining whether the district court abused its discretion in the action that it took, 528 F.2d at 1172, we are persuaded that in the instant case there was an abuse of discretion, in disapproving the settlement, except in one small particular with respect to notice to members of Class 2 plaintiffs whose rights were being adjudicated adversely to them. We reach this conclusion from a consideration of the factors identified in Flinn.
 
 
 75
 There can be no doubt that counsel for all parties to this litigation are highly competent and experienced lawyers with substantial experience in dealing with Title VII racial discrimination employment cases. They reached a settlement on the eve of trial after all reasonable discovery had been completed and after lengthy negotiations. There is not the slightest basis to suggest that they negotiated collusively or in bad faith. The fact that they, who know the case best and know their respective clients' strengths and weaknesses with respect to the issues, have agreed to the settlement and recommend it to the court is entitled to very great weight.
 
 
 76
 The attitude of members of the class is as yet unknown since the decree will not be exhibited to them until it is entered. But the entry will be in effect an order Nisi and the district court will have full opportunity to assess the objections, if any, of the members of Both classes and to enter such further orders as are proper.
 
 
 77
 Of course the recommendations of even experienced, competent counsel will not suffice to warrant the entry of a consent decree if its terms depart markedly from the plaintiffs' case. We do not disagree with the district court's major premise that a consent decree should not be entered which is in violation of law, but it is manifest since the decision in United Steelworkers of America v. Weber, --- U.S. ----, 99 S.Ct. 2721, 61 L.Ed.2d 480 (1979), which was announced after the submission of the case to the in banc court, that the proposed consent decree does not fall into that category. Weber unequivocally held that a private, voluntary, race-conscious affirmative action plan which reserved for black employees 50% Of the openings in an in-plant craft training program until the percentage of black craft workers in the plant is commensurate with the percentage of blacks in the local labor force did not violate Title VII. Since the plan was adopted by private parties, there was no question presented of an alleged violation of the Equal Protection Clause of the Constitution.
 
 
 78
 In the light of Weber, we would have little difficulty in holding that, by voluntary agreement, seasonal employees, all of whom were black, could be given seniority credit for the time that they worked as seasonal employees as well as credit toward their eligibility for medical and sick benefits, that they could be given preference in bidding for vacancies in hourly-paid permanent production job classifications, that they could be given preference in bidding for vacancies in the watchman job classification, and that a goal to fill supervisory positions in the Leaf Department with qualified blacks until one-third of the positions are filled with blacks could be set, all without violating Title VII.
 
 
 79
 We do not fault the district court for not anticipating Weber. But now that Weber has been decided, it is obvious that the district court fell into error as a result of its failure to recognize that the parties agreed to the substantive provisions of the consent decree to redress past discrimination and the present effects of past discrimination. Remedial steps of the type employed are legal and proper to redress discrimination. They were included not to favor plaintiffs because they are black but to make them equal by undoing the unlawful discriminations which had been practiced against them because they were black. This is the whole purpose of Title VII and of this lawsuit. The fact that the consent decree contained language to the effect that American and the union deny "discriminatory conduct," while plaintiffs similarly withhold any admission that any of American's employment practices are legal, should not hide the fact that plaintiffs, arguably at least, have a cause of action under Title VII for racial discrimination in employment and although American and the union, arguably at least, have good defenses, the parties, consistent with the intent of Title VII, should be allowed to compose their differences and reach an amicable settlement of the matter. Disclaimers of liability and disclaimers of admissions of legality are not uncommon in settlement agreements, as well as in consent decrees. A ruling that litigation may not be settled unless a party formally admits liability, or formally concedes legality, or a court determines liability or a lack thereof, would defeat the general policy of the law to foster settlements since the very purpose of a settlement is usually to avoid an adjudication or a concession of rights. Certainly it would ban settlements in Title VII cases in violation of congressional intent where the purpose of the settlement is to avoid an adjudication.
 
 
 80
 Since Title VII encourages settlements and since the settlement embodied in the proposed consent decree was one negotiated by competent, experienced counsel in full possession of all discoverable facts, and since we perceive no unfairness or manifest illegality in the manner in which the parties propose to compose their differences, we think that it was an abuse of discretion for the district court to decline to approve and to refuse to enter the consent decree.[3]IV.
 
 
 81
 We would therefore assert jurisdiction over this appeal, reverse the judgment of the district court, and direct it to enter the proposed decree, modified only with respect to notice to members of Class 2, See note 3 Supra. Because the majority finds that it lacks jurisdiction over this appeal, we are constrained to add a further comment. The majority's jurisdictional decision in no way touches the merits or approves the action taken by the district court. Moreover, it is grounded firmly on the fact that the order of the district court refusing to enter the consent decree is not a final judgment:
 
 
 82
 Under the Flinn analysis, the named parties may present a proposed decree to the district court in any form and at any stage in the proceedings. If one decree is refused another may be proposed. At any time the district court can reconsider its refusal to enter a decree.
 
 
 83
 Majority op. at 424.
 
 
 84
 We agree that the district court has the power to reconsider its order. Further, we believe that Weber so undercuts the theory on which the district court declined to enter the consent decree that, when the case is returned to the district court, it may well, on its own motion or at the instance of counsel for plaintiffs, conclude to reconsider its ruling in light of Weber. If reconsidered, we feel confident that the district court will conclude that Title VII presents no bar to approval of the consent decree.
 
 
 
 [1]
 Counsel in this case failed to cite Flinn to the district court in their three separate memoranda of law filed in support of the proposed decree and failed to move the court following its order to reconsider in light of that case. Instead, they immediately brought this appeal
 
 
 [2]
 As the Court noted in Coopers & Lybrand v. Livesay, 98 S.Ct. at 2459:
 There are special rules relating to class actions and, to that extent, they are a special kind of litigation. Those rules do not, however, contain any unique provisions governing appeals. The appealability of any order entered in a class action is determined by the same standards that govern appealability in other types of litigation.
 
 
 [3]
 For all our consideration of the merits of this decree, if we allowed the appeal our decision would not be dispositive. See Coopers & Lybrand v. Livesay, 98 S.Ct. at 2460-61; Seigal v. Merrick, 590 F.2d at 39. The ultimate composition of the decree would remain an open matter pending response by individual class members to the class notice. Although the named parties are bound to the terms of the decree as proposed, in fairness to class members, we think our approval of it would have to be conditioned upon acceptance of its terms by at least a majority of the members
 
 
 [4]
 As noted by the Supreme Court in Coopers & Lybrand v. Livesay, 98 S.Ct. at 2461, Congress wisely provided in § 1292(b) for appellate review of important legal issues before final judgment only as a matter of discretion by the courts involved. Such review is allowed with approval of both the district court and the court of appeals
 
 
 [1]
 We note that even the majority concedes that the consent decree was an injunction. "Here, injunctive relief was not finally denied; it was merely not granted at this stage in the proceedings." Majority op. p. 423
 
 
 [2]
 It should be noted that, in Norman v. McKee, 431 F.2d 769 (9 Cir. 1970), Cert. denied, 401 U.S. 912, 91 S.Ct. 879, 27 L.Ed.2d 811 (1971), the Ninth Circuit reached the opposite result and held that the refusal to enter a settlement of a derivative stockholders' suit was appealable
 
 
 [3]
 We think that the proposed decree should be modified in one minor respect. The consent decree provides that after its entry notice of its terms will be given to all members of Class 1 (black persons, whether currently employed or not, who were seasonal employees at any time after September 9, 1972), by posting on American's bulletin boards and by mail to each person included in the class. The notice must advise every class member that he has a right to object to the decree, the time in which to lodge an objection and the place to file written objections. Similar notice is not required to be given to members of Class 2 (black persons who sought but did not obtain seasonal employment after September 9, 1972), although the decree provides that they "are not entitled to assert claims for monetary relief."
 We think that the consent decree should give the same notice to members of Class 2 as will be given to members of Class 1. If, notice to members of Class 2 having been given, an objection to the decree, having arguable merit, is lodged, there will be need for a new representative of the class. See Goodman v. Schlesinger, 584 F.2d 1325 (4 Cir. 1978), and Cox v. Babcock & Wilcox, 471 F.2d 13 (4 Cir. 1972).