UNITED STATES of America

v.

COMMONWEALTH OF VIRGINIA, DEPARTMENT OF HIGHWAYS AND TRANSPORTATION.

Civ. A. No. 82–0933–R.

United States District Court, E.D. Virginia, Richmond Division.

Jan. 6, 1983.

See also, D.C., 558 F.Supp. 99.

Robert W. Jaspen, Asst. U.S. Atty., Elsie L. Munsell, U.S. Atty., Alexandria, Va., Wm. Bradford Reynolds, Asst. Atty. Gen., David L. Rose, Katherine P. Ransel, Teresa D. Johnson, Marybeth Martin, U.S. Dept. of Justice, Civ. Rights Div., Washington, D.C., for plaintiff.

Gerald L. Baliles, Atty. Gen. of Va., John S. Morris, III, Asst. Atty. Gen. of Va., Richmond, Va., for defendant.

## OPINION

WARRINER, District Judge.

In *Carson v. American Brands, Inc.*, 446 F.Supp. 780 (E.D.Va.1977), this Court was presented with a consent decree which granted hiring and promotional preferences [1] to black persons on the basis of their race.[2] The record presented no evidence that any persons granted such racial preference had suffered any discriminatory employment practice at the hands of the defendant employer. Indeed the employment preferences granted by the consent decree did not deal with individuals; the preference was granted on the basis of race, solely.

This Court refused to enter the consent decree and set forth at length in the opinion above cited its conclusion that Title VII prohibited race discrimination in employment and that the Equal Protection component of the Fifth Amendment would prohibit a federal court from participating in such discriminatory employment through the device of a consent decree. It was for these reasons that the Court refused entry of the decree.

The parties appealed the Court's refusal to enter the consent decree. The majority of the *en banc* Court of Appeals in *Carson v. American Brands, Inc.*, 606 F.2d 420 (4th Cir.1979), dismissed the appeal on the ground that a refusal to enter a proposed consent decree is a nonappealable order.

Dissenting judges held that the order was appealable and that the intervening decision by the Supreme Court in *United Steelworkers of America v. Weber*, 443 U.S. 193, 99 S.Ct. 2721, 61 L.Ed.2d 480 (1979), permitted private parties voluntarily to enter into racially discriminatory hiring agreements. The Fourth Circuit dissenters did not in express terms deal with the question of whether such private parties also had the right to obtain enforcement of their private discriminatory agreement through contempt proceedings in a federal court. Nor did the dissenting opinion specifically deal with the fact that the persons discriminated against, the white employees of defendant employer, were not represented in the proceeding.

Plaintiffs appealed the majority decision that the trial court's refusal to enter the consent decree was not an appealable order to the Supreme Court of the United States. That court, without ruling upon the merits of the trial court's decision that the proposed consent decree provided for racially discriminatory hiring practices, ruled that the trial court's refusal to enter the consent decree was appealable and remanded the action to the Court of Appeals to consider the merits of the trial court's refusal. *Carson v. American Brands, Inc.*, 450 U.S. 79, 101 S.Ct. 993, 67 L.Ed.2d 59 (1981).

Upon remand to the Court of Appeals, *Carson v. American Brands, Inc.*, 654 F.2d 300 (4th Cir.1981), the Fourth Circuit adopted in a *per curiam* opinion the dissenting

---

1. Preferring one race or sex in employment practices necessarily discriminates against another race or sex. It was employment preferences for white males which led, quite properly, to the enactment of the Equal Employment Opportunity Act of 1964, generally known as Title VII, 42 U.S.C. § 2000e et seq.

2. Race and sex discrimination are effected through the imposition of quotas. The decree itself refers to quotas by using the euphemism "goals." The substitution in terms is justified, perhaps, by the fact that the strict percentages are softened by insignificant escape clauses.

   Calling a quota a goal is about like calling the tail on Mr. Lincoln's sheep a fifth leg. It is still a sheep's tail.

opinion set forth in *Carson v. American Brands, Inc.,* 606 F.2d 420, 425–32 (4th Cir. 1979). Upon remand to this Court, the proposed consent decree was entered in obedience to the Fourth Circuit's mandate.

The law, then, on what factors are to be considered in exercising discretion on the question of whether a proposed consent decree should be entered in a Title VII case is set forth by the dissent on the original appeal from this Court to the Court of Appeals. *Carson v. American Brands, Inc.,* 606 F.2d 420, 425–432 (4th Cir.1979). In the fast-shifting field of employment discrimination, the Court considers it advisable to set forth verbatim the criteria the dissenters-cum-majority considered appropriate:

> [T]he most important factor that the district court must consider is the strength of the plaintiffs' claims on the merits and..., in making that evaluation, the district court should consider the extent of discovery that has taken place, the stage of the proceedings, the want of collusion in the settlement and the experience of plaintiffs' counsel who negotiated the settlement. These elements are important...because the completion of discovery ordinarily permits a reasonable evaluation of the merits of a claim, and the opinion of competent counsel, absent a showing of collusion and bad faith, is entitled to great weight. Also to be considered is the attitude of the class members and whether they favor or oppose the settlement.... [W]hile the adequacy of a settlement should be appraised, the district court should not turn its consideration of the settlement into a trial or rehearsal of the trial or make dispositive conclusions on the unsettled legal issues in the case. Finally...attention [should be paid] to the legislative intent to en-

courage settlements expressed in Title VII.

*Carson v. American Brands, Inc.,* 606 F.2d at 430.

An attempt to apply the Fourth Circuit criteria, as hereinabove set forth, leaves the Court without a basis for concurring in the consent decree. The record before me consists of a three-page unverified complaint followed by a 24-page consent decree with three appendices attached thereto. The complaint was filed on 30 December 1982; the consent decree was tendered for entry on the same day. Defendant has filed no answer (and there has been no service of process) but the consent decree does recite that defendant denies that she has engaged in sexual or racial discrimination in the Department of Highways. The complaint alleges that she has. This is all the Court has for purposes of determining "the strength of the plaintiffs' claims on the merits." *Id.* The extent of discovery is nil. The stage of the proceeding is at its inception.

Whether there is collusion is unknown, though it is common knowledge that collusion is rampant in this area since it appears that business, organized labor, and governments prefer quotas to nondiscriminatory hiring practices.[3]

The experience of plaintiff's counsel who negotiated the settlement is not shown in the record. Although William Bradford Reynolds, the Assistant Attorney General for Civil Rights, signed the complaint, the consent decree is endorsed on behalf of the United States by Katherine P. Ransel, Teresa D. Johnson, and Marybeth Martin. What their experience, reputation, and abilities may be is wholly unknown to the Court.[4]

---

3. This preference is understandable, though deplorable and was, at one time at least, unconstitutional. Nondiscriminatory hiring requires constant care and attention to see to it that stereotyping and prejudices do not subvert the best laid merit hiring and promotion plans. Discrimination suits are a constant threat. With quotas, only one area requires the attention of management (and enforcers): Have I met my quota? Thus the dream of equal employment practices has been converted into an easily organized, implemented, and policed statistical analysis.

4. Experience in other cases has shown that the mere fact that one is a government lawyer is no guarantee that he is an able, experienced, knowledgeable, and dependable lawyer.

The criteria set forth by the Fourth Circuit does not list as a consideration the experience of defendant's counsel, nevertheless the Court notes that the decree is endorsed on behalf of the Commonwealth by Gerald L. Baliles, the Attorney General of Virginia.

There is nothing in the record to show the attitude of the class members and whether they favor or oppose the settlement. Actually this is not a class action case but it proceeds, under ordinary circumstances, as if it were a class action. There are three classes affected by this decree: (1) black persons, (2) females, and (3) white males. While the Court would assume that many if not most black persons and many if not most females are opposed to race and sex discrimination (even, or especially, when it prefers their race or sex), the Court recognizes that few people of any race or sex will look a gift horse in the mouth. As far as white males are concerned, the Court has nothing in the record to indicate whether this class is willing to suffer the discriminatory impact of the consent decree.

The Court has not attempted to turn its consideration of the settlement into a trial or rehearsal of a trial; the Court has simply accepted that which the parties tendered and has tried to evaluate it under the principles laid down by the dissenters in *Carson v. American Brands, Inc.*, 606 F.2d 420, 430 (4th Cir.1979).

Finally, in considering the legislative intent to encourage settlement expressed in Title VII, the Court opines that only if that legislative intent overrides all the other considerations set forth by the dissenters, and dealt with above, should the consent decree be entered.

Having thus considered seriatim the criteria, this Court can find no basis upon which it should exercise its discretion to enter the decree.

There are additional reasons why the proposed decree should not be entered. This case differs from *Carson v. American Brands, Inc.* in significant particulars. The Fourth Circuit dissenters in *Carson v. American Brands, Inc.*, 606 F.2d 420, 425–32 (4th Cir.1979), held that the racially discriminatory hiring practices approved by them in that case did not violate Title VII because of the intervening opinion in *United Steelworkers of America v. Weber,* 443 U.S. 193, 99 S.Ct. 2721, 61 L.Ed.2d 480 (1979). The dissenters observed that:

> *Weber* unequivocally held that a private, voluntary, race-conscious affirmative action plan...did not violate Title VII.

606 F.2d at 430.

Whatever *Weber* unequivocally held about private, voluntary plans, it did not hold that such private, voluntary plans may or must be enforced by the contempt powers of a federal court. Thus, *Carson v. American Brands, Inc.* carried *Weber* a significant and drastic step further. What private parties privately and voluntarily enter into they may privately and voluntarily withdraw from, suffering no more than civil damage liability under a privately brought breach of contract action. When parties violate a consent decree they may go to jail as a result of a criminal action prosecuted by the United States.

But there is an even more significant difference between *Carson* and *Weber,* on the one hand, and the instant case on the other. If *Weber* is to be read as condoning race discrimination in hiring by private parties, the most that can be said is that such discrimination either is or is not in conformity with a statute of Congress, *i.e.* Title VII. In the instant case, the question is not just whether the Commonwealth is conforming to the congressional mandate set forth in Title VII (or the Supreme Court's interpretation thereof set forth in *Weber*), but instead the question is whether the Commonwealth can engage in racial and sexual discrimination in employment practices contrary to the mandate of the Fourteenth Amendment to the United States Constitution. The Fourteenth Amendment is not applicable to private persons such as the Steelworkers and Kaiser Aluminum in *Weber* or to American Brands in *Carson,* but the Fourteenth Amendment is specifically and expressly applicable to the States. Here, the defendant is the Commonwealth of Virginia.

That the Fourteenth Amendment prohibits race discrimination by a State in any form, manner, guise, or shape, has been so often stated by this Court, by the Fourth Circuit, and by the Supreme Court of the United States that it seems doubtful that any tribunal would give a moment's thought to the idea that a State may make exceptions to the non-discriminatory rule of the Fourteenth Amendment. The Fourteenth Amendment similarly restricts sex discrimination by a State.

Thus, despite Title VII's intent to encourage settlements, this Court holds, at least at this stage, that that intent is overridden by the Fourteenth Amendment's intent that Virginia provide equal protection of the laws to all her citizens, female *and* male, black *and* white.[5]

The proposed consent decree is REFUSED.

And it is so ORDERED.

---

5. That the United States and the Commonwealth should agree that the Commonwealth's employment practices be based on race and sex and that they propose that a federal court enforce and appear to endorse their discriminatory agreement is saddening. One would think that the United States and the Commonwealth would feel bound to set an example of nondiscriminatory employment.