Lawrence and Elizabeth NORMAN, Plaintiffs-Appellees,

v.

R. L. McKEE et al., Defendants,

R. L. McKee, E. R. Foley, Elwood Murphy, and Insurance & Securities Incorporated, Defendants-Appellants.

Lawrence and Elizabeth NORMAN, Plaintiffs-Appellees,

v.

R. L. McKEE et al., Defendants,

W. W. Weeth, W. H. Draper, Jr., and Pacific National Bank of San Francisco, Defendants-Appellants.

Lawrence and Elizabeth NORMAN, Plaintiffs-Appellants,

v.

R. L. McKEE et al., Defendants-Appellees.

Nos. 23489, 23548, 23582.

United States Court of Appeals, Ninth Circuit.

Aug. 28, 1970.

As Modified Oct. 5, 1970.

Moses Lasky (argued) of Brobeck, Phleger & Harrison, San Francisco, Cal., for appellants in No. 23489.

Brent M. Abel, Wm. W. Schwarzer, John R. Reese, of McCutchen, Doyle, Brown & Enersen, San Francisco, Cal., for appellants in No. 23548.

Kant & Gordon, Beverly Hills, Cal., Pomerantz, Levy, Haudek & Block, New York City, for appellants in No. 23582.

Alma M. Myers (argued) Berkeley, Cal., Patmont & Myers, LeRoy W. Rice (argued), Paul A. Renne of Cooley, Crowley, Gaither, Godward, Castro & Huddleson, San Francisco, Cal., Abraham Pomerantz (argued) of Pomerantz, Levy, Haudek & Block, New York City, for appellees.

Donald Feuerstein (argued) Asst. Gen. Counsel, Philip A. Loomis, Jr., Gen. Counsel, Walter P. North, Assoc. Gen. Counsel, Patricia H. Latham, Atty., Solomon Freedman, Director, Division of Corporate Regulation, Securities & Ex-

change Commission, Washington, D. C., amicus curiae.

Before BROWNING and HUFSTEDLER, Circuit Judges, and BATTIN,* District Judge.

BATTIN, District Judge:

This is an action against Insurance Securities Trust Fund (hereinafter the Fund), its directors and officers, its trustee, Pacific National Bank, and its underwriter and manager, Insurance and Securities Incorporated (hereinafter ISI). Plaintiffs have been investors in the Fund since 1963. They bring the action derivatively on behalf of the Fund and representatively on behalf of all other investors. The Fund has approximately 175,000 investors. Jurisdiction is invoked under the Investment Company Act of 1940, 15 U.S.C., Section 80a–1 et seq.

## BACKGROUND OF THE CASE

ISI is the organization responsible for bringing the Fund into existence. It performs three important functions for the Fund: The selection of investments, the sale of new shares, and the execution of portfolio transactions. For the function of investment advisor and manager, it receives a "management" or "advisory" fee. The complaint alleges that this fee for the fiscal year ending in 1965 was $5,369,282. For selling shares, ISI receives a salesman's commission or "creation" fee. For the fiscal year ending in 1965, the complaint alleges that this fee amounted to $11,539,666. For executing portfolio transactions, ISI receives a brokerage fee. For the years 1962 through 1965, it is alleged to total $3,772,000. The total of the fees for the years alleged is $20,680,948. The complaint alleges that the management and creation fees were and are excessive and that ISI has no right to charge any brokerage commission or, in the alternative, that the brokerage commissions were and are excessive. The complaint prays for recovery of the excessive fees.

After extensive discovery, plaintiffs and defendants negotiated a settlement. The settlement provided for a new schedule of management fees at lower rates to be applicable for a ten-year period. The creation fee on new investments would be reduced for ten years from 8.85% of the sale price of a new certificate to 8.8%. The settlement provided that brokerage commissions received after July 1, 1967, would be restored to the Fund so far as those charges exceed ISI's cost of performing brokerage service and that brokerage service for a period of ten years would be performed at cost. Because the suit was brought both derivatively and as a class action, court approval of the settlement was necessary under Rules 23.1 and 23(e), F.R.Civ.P. The district court issued an order to show cause why the settlement should not be allowed and notice was given to the investors in the Fund. Hearings were held in April and May, 1968. At least two investors appeared in opposition to the settlement. Before concluding the hearings, the court invited a statement from the Securities and Exchange Commission which responded by filing a brief as *amicus curiae*. By order dated July 29, 1968, 290 F.Supp. 29, the district court ordered "that the proposed settlement, as now presented, be disapproved." The named plaintiffs and defendants appealed. Appellees are investors who appeared in opposition to the settlement.

The district judge found that the proposed settlement was "so inadequate, and, therefore, so unfair that it should not receive judicial approval." With regard to the management fees, plaintiffs predicted that the new schedule would reduce such fees by about $3.5 million over the ten-year period. The new schedule would be applicable only to new certificates. The district court reasoned, therefore, that only future investors would benefit from the new schedule and not the present investors who sought re-

---

* Honorable James F. Battn, United States District Judge for the District of Montana, sitting by designation.

covery of excess management fees. The creation fee was charged on the sale of a new certificate or the reinvestment of a matured certificate in a new certificate. Plaintiffs predicted that the new rates in the settlement would reduce such fees by $5 million over the ten-year period. Before the settlement offer was made, the SEC adopted a rule prohibiting creation fees when the proceeds of a matured certificate are reinvested in a new certificate. The district court reasoned that ISI's offer to waive reinvestment creation fees in the future was no consideration, and that, with regard to new investments, the settlement would not benefit the present investors who sought to recover excessive creation fees. Further, as to both management and creation fees, the court pointed out the view of the SEC that such fees were not charged against the Fund but are paid by an investor when he purchases a certificate. Since the settlement waived claims for past improper charges, it would not benefit former and present investors who had already paid the fees and who may seek to recover the excessive fees in an individual action.

Approximately one month before the settlement here was proposed to the court, the SEC and ISI reached a settlement of an action pending before the SEC. With regard to brokerage fees under that settlement, ISI was ordered to refund the amount of fees charged after July 1, 1967, and to begin performing brokerage services at cost for an indefinite time. The district court found that the settlement of brokerage fees did not benefit the Fund or its investors since ISI had only offered to do for ten years what the SEC had already ordered it to do indefinitely.

Two questions are presented by this appeal: (1) Whether an order disapproving a proposed settlement of a class action or a stockholder's derivative suit is appealable as a "final" order, and (2) whether the district judge abused his discretion in disapproving the settlement. We hold that the order is appealable and that the district judge acted within the bounds of his discretion.

## APPEAL

■ Paul F. Geerlings, an Appellee, filed a motion to dismiss the appeal. Appellants ISI, McKee, Foley, and Murphy argue in their brief that Geerlings has no standing to appear against ISI since he was employed as ISI's Associate General Counsel while this suit was pending. We agree. Appellants point out that Geerlings was not only aware of this suit when he acted as an attorney for ISI, but he represented ISI on matters specifically relating to this case. Certainly he could not appear on his own behalf against ISI. Chugach Electric Association v. U. S. District Court, 370 F.2d 441 (9 Cir. 1966). To allow him to appear through his attorney would be to allow him to do indirectly what he cannot do directly. Holding that Geerlings does not have standing to appear against ISI, however, does not mean that the question of appealability must be disregarded. Since appealability relates directly to our jurisdiction, it is "encumbent upon us to ascertain whether the order of the district court is final and appealable." Budke v. Kaiser-Frazer Co., 275 F.2d 217, 219 (9 Cir. 1960).

Under Title 28 U.S.C., Section 1291, the courts of appeals have jurisdiction of appeals "from all final decisions" of United States district courts. The historic policy, and the concept of finality on which Appellees rely, is that a "final decision" is one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment. Catlin v. United States, 324 U.S. 229, 65 S.Ct. 631, 89 L.Ed. 911 (1945); Cobbledick v. United States, 309 U.S. 323, 60 S.Ct. 540, 84 L.Ed. 783 (1940). Despite its apparent simplicity, however, this definition has not proved workable in all situations. The Supreme Court conceded long ago that the cases on finality "are not altogether harmonious," McGourkey v. Toledo & Ohio Central Railway Co., 146 U.S. 536, 545, 13 S.Ct. 170, 36 L.Ed. 1079 (1892), and the court stated more recently that it "cannot devise a form of words that will settle this recurrent problem." Dickinson v. Petroleum Conversion Corp., 338 U.S.

507, 508, 70 S.Ct. 322, 94 L.Ed. 299 (1950).

One group of cases in which the question of finality was considered involves what the Supreme Court has termed "collateral orders." A collateral·order is an offshoot of the principal litigation which is immediately appealable as a "final decision" because of the practicalities of the litigation and because it disposes of a matter separate from the merits of the case. The leading case for allowing appeal of a collateral order is Cohen v. Beneficial Industrial Loan Corporation, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). That case was a stockholder's suit in which the defendant corporation moved under New Jersey law to require plaintiff to post security for defendant's costs. The motion was denied. In holding that the order denying the motion was appealable, the Supreme Court said at 337 U.S. 546, 69 S.Ct. 1225:

> "This decision appears to fall in that small class which finally determines claims of right separate from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated."

The Supreme Court, citing *Cohen, supra,* reiterated its practical approach to the question of finality in Gillespie v. U. S. Steel Corporation, 379 U.S. 148, 85 S. Ct. 308, 13 L.Ed.2d 199 (1964). *Gillespie* was a Jones Act case where the district court struck portions of the complaint including the parts relating to recovery for persons other than the decedent's mother. In allowing the appeal from that ruling, the Court stated at 379 U.S. 153, 85 S.Ct. 311:

> "It is true that the review of this case by the Court of Appeals could be called 'piecemeal'; but it does not appear that the inconvenience and cost of trying this case will be greater because the Court of Appeals decided the issues raised instead of compelling the parties to go to trial with them

unanswered. We cannot say that the Court of Appeals chose wrongly under the circumstances. And it seems clear now that the case is before us that the eventual costs, as all the parties recognize, will certainly be less if we now pass on the questions presented here rather than send the case back with those issues undecided. Moreover, the delay of perhaps a number of years in having the brother's and sister's rights determined might work a great injustice on them, since the claims for recovery for their benefit have been effectively cut off so long as the District Judge's ruling stands."

The meaning of the term "collateral" was set out by the Supreme Court in Mercantile National Bank at Dallas v. Langdeau, 371 U.S. 555, 83 S.Ct. 520, 9 L.Ed.2d 523 (1963). In that case the Texas Supreme Court overruled objections to venue of an action where the action was brought in a venue proper under state law although a federal statute arguably required suit to be brought elsewhere. The Court allowed the appeal, saying at 371 U.S. 558, 83 S.Ct. 522:

> "This is a separate and independent matter, anterior to the merits and not enmeshed in the factual and legal issues comprising the plaintiff's cause of action."

In *Cohen, supra,* at 337 U.S. 546, 69 S.Ct. 1225, the Supreme Court spoke of the order denying security for costs as an order which "did not make any step toward final disposition of the merits of the case and will not be merged in final judgment." It seems clear in this case that the order disapproving the proposed settlement is a collateral order. The proposed settlement is independent of the merits of the case. It would not merge in final judgment. Disapproval of the settlement is not a step toward final disposition and it is not in any sense an ingredient of the cause of action. In itself, the district judge's order is final on the question of whether the proposed settlement should be given judicial approval.

■ The ultimate balance on the question of finality, as the Supreme Court stated in Dickinson v. Petroleum Conversion Corp., 338 U.S. 507, 511, 70 S.Ct. 322, 324, 94 L.Ed. 299 (1950), is between "the inconvenience and costs of piecemeal review on the one hand and the danger of denying justice by delay on the other." As a practical matter, stockholder's derivative suits and class actions generally present complex questions and involve large numbers of exhibits and witnesses. The present case is a good example. The trial would be lengthy and expensive. In this situation, therefore, we think that the cost and delay of piecemeal review, as balancing factors, are diminished in importance. The named plaintiffs, as representatives of a class under Rules 23.1 and 23(e), F.R.Civ.P., have a strong duty to fairly and adequately represent the interests of the class. Considering again the length of trial in such cases, the right of the unnamed plaintiffs to fair representation may be infringed by the erroneous disapproval of a settlement. To those parties, the disapproval of a settlement would only delay justice. We think that the inconvenience of piecemeal review of an order disapproving a settlement is outweighed by the danger of denying justice by delay. We hold, therefore, that orders disapproving settlements under Rules 23.1 and 23(e), F.R.Civ.P., are appealable as final decisions under Title 28 U.S.C., Section 1291.

## DISAPPROVAL OF THE SETTLEMENT

■ Rules 23(e) and 23.1, F.R.Civ.P., provide that an action brought under those rules "shall not be dismissed or compromised without the approval of the court." The reason for the requirement is obvious. Because the rights of many persons are at stake who are parties to the action only through their representative, a settlement negotiated between the named parties may not give due regard to the interests of those unnamed. Cohen v. Young, 127 F.2d 721 (6 Cir. 1942). The question for the district judge is whether the proposed settlement is fair and adequate to all concerned. The question on appeal here is whether the district judge abused his discretion in denying the proposed settlement.

■ Appellants contend that the district judge abused his discretion by failing to directly balance the merits of plaintiffs' claims against the benefits of settlement. We do not agree. Since the exercise of discretion involves essentially a question of fairness, the district judge was entitled to view with more weight the balance between what plaintiffs sought in their complaint and what the settlement provided. Appellants also argue that the proposed settlement should have been accepted because a triangular understanding existed between the parties to this suit and the SEC that both actions would be settled on the same terms. We do not think that the district judge abused his discretion by not accepting the settlement on this basis, especially in view of his findings that the settlement with the SEC was broader than the proposed settlement of this suit and that the proposed settlement waived plaintiffs' claims to restoration of any part of the alleged excess fees. He was entitled to consider that at least some unnamed plaintiffs did not have such an understanding since certain of them appeared in opposition to the settlement.

■ The district judge properly understood that his responsibility was to act as guardian of the absent parties and the corporate fund as a whole. As such, he was entitled to consider that the prayer for relief was reasonable and that the settlement, when compared to the relief sought, was inadequate. To hold that no consideration existed for part of the settlement was also proper when the SEC settlement was compared to the proposed settlement of this suit. In short, we find that the district judge did not act arbitrarily or unreasonably under all the circumstances presented by this case. He acted entirely within the bounds of his discretion.

The judgment of the district court is affirmed.