**STATE OF UTAH, By and Through the UTAH STATE DEPARTMENT OF HEALTH, Plaintiff–Appellant,**

v.

**KENNECOTT CORPORATION, Defendant–Appellant and Cross–Appellee,**

**Salt Lake County Water Conservancy District, Intervenor–Appellee and Cross–Appellant.**

Nos. 92–4173, 92–4179 and 92–4180.

United States Court of Appeals, Tenth Circuit.

Jan. 31, 1994.

Fred G. Nelson (Jan Graham, Atty. Gen.; R. Paul Van Dam, and Denise Chancellor, Utah Atty. General's Office, with him on the brief), Salt Lake City, UT, for plaintiff-appellant State of Utah; David W. Tundermann (James B. Lee, Daniel M. Allred, Jim Butler, and Lisa A. Kirschner with him, on the briefs) of Parsons Behle & Latimer, Salt Lake City, UT, for defendant-appellant and cross-appellee Kennecott Corp.

Douglas J. Parry of Parry Murray Ward & Cannon, Salt Lake City, UT, and Dale F. Gardiner, Salt Lake County Water Conservancy Dist., West Jordan, UT (Blake S. Atkin of Parry Murray Ward & Cannon, Salt Lake City, UT, with him on the briefs), for intervenor-appellee and cross-appellant.

Rex E. Lee, Richard B. Stewart, and James L. Connaughton of Sidley & Austin, Washington, DC, for amicus curiae Western Regional Council.

Maria Savasta Kennedy and Laurens H. Silver of Sierra Club Legal Defense Fund, San Francisco, CA, and Kenley W. Brunsdale, Salt Lake City, UT, for amici curiae Sierra Club and the Mineral Policy Center.

Before BALDOCK, McWILLIAMS, and BRORBY, Circuit Judges.

BRORBY, Circuit Judge.

Both the State of Utah and Defendant Kennecott Corporation appeal an order of the federal district court denying a motion to approve and enter a consent decree submitted by the parties. The proposal would settle Utah's claim for natural resources damages under § 107 of the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. §§ 9601–9675. Salt Lake County Conservancy District (District), a permissive intervenor in the proceeding below, cross-appeals the trial court's decision to deny the District intervention as a matter of right. The District also moves to dismiss the appeal of Utah and Kennecott for lack of jurisdiction. We are asked to review a nonfinal order of a district court under various exceptions to 28 U.S.C. § 1291 including (1) the collateral order exception to the finality doctrine, (2) this court's interpretation of pragmatic finality, and (3) an interlocutory order with the practical effect of granting or denying injunctive relief. We grant the motion to dismiss for lack of jurisdiction.

## BACKGROUND

Kennecott, Utah, and various local governments have, since 1983, studied the threat of groundwater contamination from Kennecott's Bingham Canyon mining operations in Salt Lake County. In 1986, Utah filed CERCLA claims, presumably to preserve its rights in light of CERCLA's statute of limitations. At that time, asserted damages were $129 million based on potential injury to 109,215 acre feet of groundwater over a ten to twenty year period. Prior to the 1992 memorandum

and order of the trial court,[1] various stays were granted to allow settlement negotiations and the completion of technical studies.

Kennecott's first settlement proposal offered the assignment of their water rights (valued at $2 million) plus $100 million for remediation of the contaminated water in exchange for dismissal of the lawsuit. Kennecott also proposed to take independent action to reduce continued pollution from the mining operation sources and to remediate heavy metals from the spreading contaminate plume. Utah rejected this offer and stressed that, given the tentative knowledge of the plume's content, boundary, and migration, the State could not conclude the settlement would satisfy all public health concerns.

Subsequent negotiations split the issues of natural resources damages and costs of remediation. Utah, Kennecott and the United States Environmental Protection Agency (EPA) negotiated an Agreement in Principle toward future cleanup and response costs associated with remediating the Kennecott mining operation contamination.[2] The Agreement expressly disclaimed any effect on Utah's settlement of natural resources damage claims.

With the current proposal, in exchange for monetary recovery of $12 million, Utah agreed to release Kennecott from (1) all damages to surface or groundwater in a defined mining impact area, and (2) injunctive relief or response costs associated with plume remediation. The release was limited by a reopener provision, reserving Utah's right to seek additional recovery if the contamination was discovered to be greater than anticipated. The release also expressly preserved potential claims by third parties.

After a period of public comment, the trial court declined to approve the proposed settlement and ordered an evidentiary hearing. The District moved to intervene as a matter of right. The trial court denied this motion but granted permissive intervention for the

1. *Utah v. Kennecott Corp.,* 801 F.Supp. 553 (D.Utah 1992).

2. More recently, the EPA announced the three parties jointly decided not to pursue the comprehensive cleanup proposal embodied in the Agreement in Principle. U.S. EPA Press Release (Aug. 27, 1993).

limited purposes of participating in discovery and evidentiary hearings. Reviewing the proposed consent decree for a settlement that was " 'reasonable, fair, and consistent with the purposes that CERCLA is intended to serve,' " the trial court concluded the proposal was deficient. *Kennecott,* 801 F.Supp. at 567 (citation omitted). Accordingly, the trial court denied approval of the proposed consent decree. *Id.* at 572. Instead of attending a scheduled case management conference, both Utah and Kennecott separately appealed the trial court's order of denial. The District, a permissive intervenor, cross-appealed the denial of intervention as a matter of right.

After consolidating the appeals, we asked the parties to file memorandum briefs on the issue of jurisdiction pursuant to 10th Cir.R. 27.2.2. Before us is a motion by the District to dismiss the Utah and Kennecott appeals for lack of a "final appealable order" upon which to base 28 U.S.C. § 1291 jurisdiction.[3]

## DISCUSSION

 Title 28 U.S.C. § 1291 provides "jurisdiction of appeals from all final decisions of the district courts of the United States." Historically, a "final decision" is a decision by the district court that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Catlin v. United States,* 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945); *see Gulfstream Aerospace Corp. v. Mayacamas Corp.,* 485 U.S. 271, 275, 108 S.Ct. 1133, 1136, 99 L.Ed.2d 296 (1988). In the instant case, an order denying a motion to approve and enter a consent decree is not a decision on the merits that ends the litigation. Rather, the district court's order ensures that litigation will continue in the district court. Appellants Utah and Kennecott concede as much and argue the trial court's order is immediately appealable under vari-ous exceptions to the finality requirement. In particular, Appellants contend jurisdiction is proper under (1) the collateral order exception to § 1291, (2) the pragmatic finality doctrine, or (3) the § 1292(a)(1) statutory exception, an order with the practical effect of granting or denying injunctive relief.[4]

### I

 The Supreme Court, beginning with *Cohen v. Beneficial Indus. Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), has interpreted § 1291 to permit an appeal of a nonfinal order if an order falls within the "narrow exception to the normal application of the final judgment rule, which has come to be known as the collateral order doctrine." *Midland Asphalt Corp. v. United States,* 489 U.S. 794, 798, 109 S.Ct. 1494, 1498, 103 L.Ed.2d 879 (1989). To meet the *Cohen* exception an order must "[1] conclusively determine the disputed question, [2] resolve an important issue completely separate from the merits of the action, and [3] be effectively unreviewable on appeal from a final judgment." *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 468, 98 S.Ct. 2454, 2458, 57 L.Ed.2d 351 (1978). Unless all three requirements are met, jurisdiction is not available under the collateral order doctrine. *Gulfstream,* 485 U.S. at 276, 108 S.Ct. at 1136–37. The trial court's denial of the proposed consent decree does not satisfy either the first or second prongs.

### A

To first satisfy the *Cohen* doctrine, the trial court's denial of the consent decree must conclusively determine the parties' ability to settle their claims. Orders that are "inherently tentative" are contrasted with those expected to be the final word on the subject addressed. *See Gulfstream,* 485 U.S. at 277–78, 108 S.Ct. at 1137–38 (rejecting

---

3. No party has moved for trial court certification under 28 U.S.C. § 1292(b), nor sought a writ of mandamus, 28 U.S.C. § 1651(a), on their respective issues.

4. The District has stated it will withdraw its cross-appeal in the event we deny jurisdiction to the appeals of Utah and Kennecott. For this reason, we do not analyze our jurisdiction to review an order granting permissive intervention but denying intervention of right. We note that, should the District fail to withdraw its appeal, *Stringfellow v. Concerned Neighbors in Action,* 480 U.S. 370, 107 S.Ct. 1177, 94 L.Ed.2d 389 (1987), would require a denial of jurisdiction as well.

collateral order review of a denial of a motion to stay as inherently tentative); *Coopers & Lybrand,* 437 U.S. at 469 & n. 11, 98 S.Ct. at 2458 & n. 11 (holding the collateral order exception does not apply to a pretrial order denying class certification because the order is subject to revision prior to a decision on the merits). Inherently tentative orders are those "to which some revision might reasonably be expected in the ordinary course of litigation." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 12–13 n. 14, 103 S.Ct. 927, 935 n. 14, 74 L.Ed.2d 765 (1983). Utah and Kennecott argue the district court conclusively determined the parties' ability to settle by rejecting the technical premises underlying the settlement.

Although noting a conflict in the circuits, the Supreme Court, in *Carson v. American Brands, Inc.,* 450 U.S. 79, 82–83 nn. 6 & 7, 101 S.Ct. 993, 996 nn. 6 & 7, 67 L.Ed.2d 59 (1981), declined to decide whether an appeal under the collateral order exception was proper for denials of consent decrees. At least one federal circuit has ruled a district court's refusal to enter a consent decree is not appealable under § 1291, *see Seigal v. Merrick,* 590 F.2d 35 (2d Cir.1978), while another has decided such orders are appealable, *Norman v. McKee,* 431 F.2d 769 (9th Cir.1970), *cert. denied,* 401 U.S. 912, 91 S.Ct. 879, 880, 27 L.Ed.2d 811 (1971).[5] Other circuits simply reject collateral order jurisdiction in dicta. *See Donovan v. Robbins,* 752 F.2d 1170, 1172 (7th Cir.1985) (refusal to approve consent decree is "classic example of a nonfinal order"); *New York v. Dairylea Coop. Inc.,* 698 F.2d 567, 570 n. 10 (2d Cir. 1983) (approving of appellant's decision not to raise collateral order grounds, stating the *Cohen* exception "is to be kept within narrow bounds"); *Carson v. American Brands, Inc.,* 606 F.2d 420, 423–24 (4th Cir.1979) (approving of *Seigal* as an analogous case though dismissing on § 1292(a)(1) grounds), *rev'd on other grounds,* 450 U.S. 79, 101 S.Ct. 993, 67 L.Ed.2d 59 (1981). We conclude the better reasoned rule finds a denial of a settlement does not conclusively determine the parties' ability to settle.

■ Similar to the denial of a motion to stay in *Gulfstream* and the denial of class certification in *Coopers & Lybrand,* denial of an offer of settlement is commonly open to revision by the trial court prior to a final judgment on the merits. In this case, the parties are free to continue with renewed settlement efforts and further proceedings to secure court approval. Although the trial court concluded that Utah and Kennecott have not yet met their burden of substantive fairness under CERCLA, the trial court did not foreclose future proposed consent decrees.

The Appellants contend even though the trial court may not have expressly barred further negotiation the order impliedly did so by attacking the underlying technical premises of the settlement. In particular, Utah and Kennecott assert the order requires them to undertake additional technical studies and include in the consent decree injunctive provisions requiring Kennecott to protect and restore injured ground water. This argument reads too much into the trial court's order and too little into the doctrinal requirements of the *Cohen* exception.

The proper inquiry is whether the trial court is less likely to revise its prior denial as new settlement proposals are offered, not whether the parties feel discouraged and less likely to continue with settlement negotiations. Orders that are inherently tentative characteristically allow or invite reconsideration on the basis of express procedural requirements or, in common experience, are regularly reconsidered. *See* 15A Charles A. Wright et al., Federal Practice and Procedure § 3911.1, at 375 (1992). Commonly, settlements may be offered during the final hearings on the merits. The trial court's order contains no limitations on the court's ability to reconsider future proposals or the initial order denying the proposed consent decree. Appellants have no right to an unfair consent decree under CERCLA, even if

---

5. The persuasive authority of *Norman* is negligible. Subsequent to *Carson,* the Ninth Circuit disavowed its prior decision and determined that *Norman* had been overruled by *Carson. EEOC v.*

*Pan American World Airways,* 796 F.2d 314, 318 n. 7 (9th Cir.1986), *cert. denied,* 479 U.S. 1030, 107 S.Ct. 874, 93 L.Ed.2d 829 (1987).

the unfair terms are underlying "technical premises." The trial court's order does no more than permit Appellants to propose a new consent decree within the bounds of substantive fairness. The order does not conclusively determine the ability of the parties to settle.

## B

██ Utah and Kennecott next argue, since the parties lost the right to settle on the specific terms of the proposed consent decree, they lost an important right that cannot be vindicated effectively after the trial has concluded. Because we recently held a broad and unbounded "right not to be tried" is no grounds for immediate appeal, Appellants fail to satisfy the second *Cohen* requirement. *See Desktop Direct, Inc. v. Digital Equip. Corp.,* 993 F.2d 755 (10th Cir.), *cert. granted,* —— U.S. ——, 114 S.Ct. 379, 126 L.Ed.2d 329 (1993).[6] Although Utah and Kennecott contend the lost right to settle satisfies the third *Cohen* prong, we have held the question of an "important issue"—part of the second *Cohen* prong—is the appropriate analysis in this context. *Id.* at 758. The original formulation by the *Cohen* Court examined whether the "decision [fell into] that small class ... too important to be denied review." 337 U.S. at 546, 69 S.Ct. at 1225–26; *see Lauro Lines S.R.L. v. Chasser,* 490 U.S. 495, 503, 109 S.Ct. 1976, 1980, 104 L.Ed.2d 548 (1989) (Scalia, J., concurring) (a right not to be tried, even if unreviewable, must be sufficiently important to overcome the policies militating against interlocutory appeals).

██ The Supreme Court has cautioned courts "not to play word games with the concept of a 'right not to be tried.'" *Midland Asphalt,* 489 U.S. at 801, 109 S.Ct. at 1499. "[I]n some sense, all litigants who have a meritorious pretrial claim for dismissal can reasonably claim a right not to stand trial." *Van Cauwenberghe v. Biard,* 486 U.S. 517, 524, 108 S.Ct. 1945, 1950, 100 L.Ed.2d 517 (1988). The mere possibility that an erroneous ruling at the trial level may result in additional litigation is not sufficient to set aside the finality requirement imposed by Congress. *Richardson–Merrell, Inc. v. Koller,* 472 U.S. 424, 436, 105 S.Ct. 2757, 2764, 86 L.Ed.2d 340 (1985).

The Appellants in *Desktop Direct* sought review of an order vacating a prior dismissal and rescinding a settlement formerly accepted by the trial court. We rejected the jurisdictional importance of a so-called "right not to be tried" absent a constitutional or statutory basis. *Desktop Direct,* 993 F.2d at 760. The Supreme Court's narrow reading of the collateral order doctrine reveals only one situation important enough—qualified immunity for a public official defendant—to allow an interlocutory appeal in the absence of a constitutional or statutory guarantee. In dismissing the appeal, we concluded the *Cohen* doctrine should not be "expanded without compelling justification." *Id.* In the case at hand, Utah and Kennecott do not point to a right of review under CERCLA or other statutory or constitutional grounds that would require appellate review of a denied consent decree. The bare desire of Utah and Kennecott to avoid trial is not "important" enough to justify ignoring the § 1291 prerequisite of finality.

Requiring a constitutional or statutory basis for a "right not to go to trial" is sensible. Without clarity in the application of exceptions, the finality doctrine becomes riddled and ineffective. Repeatedly, the Court and commentators encourage the use of statutory exceptions in the face of efforts to stretch the

---

6. The Supreme Court's recent grant of certiorari in this case will likely resolve the circuits' diverging treatment of pretrial orders refusing to enforce previously granted settlements. *Compare Desktop Direct* (rejecting a broad reading of a right not to go to trial); *Transtech Indus., Inc. v. A & Z Septic Clean,* 5 F.3d 51 (3d Cir.1993) (same), *petition for cert. filed,* 62 USLW 3429 (Dec. 16, 1993) (No. 93–960), *with Forbus v. Sears Roebuck & Co.,* 958 F.2d 1036 (11th Cir.) (granting jurisdiction to review a denial of enforcement of a settlement on grounds of a right not to go to trial), *cert. denied,* —— U.S. ——, 113 S.Ct. 412, 121 L.Ed.2d 336 (1992); *Grillet v. Sears, Roebuck & Co.,* 927 F.2d 217 (5th Cir. 1991) (same); *Janneh v. GAF Corp.,* 887 F.2d 432 (2d Cir.1989) (same), *cert. denied,* 498 U.S. 865, 111 S.Ct. 177, 112 L.Ed.2d 141 (1990). Our adherence to *Desktop Direct* in this section does not affect our earlier conclusion that Appellants have not satisfied the first *Cohen* prong.

collateral order doctrine. *See Van Cauwenberghe,* 486 U.S. at 529–30, 108 S.Ct. at 1953–54 (conclusion to deny collateral order appeal "fortified by the availability of interlocutory review" under § 1292(b)); *Coopers & Lybrand,* 437 U.S. at 474, 98 S.Ct. at 2461 (principal vice of "death knell" doctrine is circumvention of proper use of § 1292(b)); 16 Wright et al., *supra* § 3929, at 137–38 (vigorous use of § 1292(b) to limit the expansion of other appealability concepts reduces ambiguity that. could lead to unnecessary appeals).

Reinforcing the need for definition in appellate review, Congress has recently increased Supreme Court rulemaking authority to define the scope of interlocutory and other nonfinal appeals. *See* Judicial Improvements Act of 1990, Pub.L. No. 101–650 § 315, 104 Stat. 5089, 5115 (codified as amended at 28 U.S.C.A. § 2072(c) (Supp.1993)) (power to define "final" for the purposes of appeal under § 1291); Federal Courts Administration Act of 1992, Pub.L. No. 102–572 § 101, 106 Stat. 4506, 4506 (codified as amended at 28 U.S.C.A. § 1292(e) (Supp.1993)) (power to prescribe new rules for interlocutory appeals not otherwise provided in § 1292).

■ An obvious statutory basis for appeal in the context of avoiding unnecessary litigation is § 1292(b) certification. A primary purpose of § 1292(b) is to provide an opportunity to review an order when an immediate appeal would "materially advance the ultimate termination of the litigation." S.Rep. No. 2434, 85th Cong., 2d Sess. 1 (1958) (hereinafter S.Rep. 2434), *reprinted in* 1958 U.S.C.C.A.N. 5255, 5255; *see* Note, *Interlocutory Appeals in the Federal Courts Under 28 U.S.C. § 1292(b),* 88 Harv.L.Rev. 607, 609–11 (1975) (avoidance of wasted trial court time is sole purpose of § 1292(b)). A report by a Tenth Circuit committee addressing the same problem found:

Our recommendation is founded upon the premise that the enlargement of the right to appeal should be limited to extraordinary cases in which extended and expensive proceedings probably can be avoided by immediate final decision of controlling questions encountered early in the action.

S.Rep. 2434, *supra,* 1958 U.S.C.C.A.N. at 5262 (appendix to the Senate report, submitted without dissent from other circuits). The requirement of district court certification is equally imperative, however, as a procedural screen to avoid a flood of fruitless petitions invoked contrary to the purpose of § 1292(b). *Id.*

Utah and Kennecott seek to expand the *Cohen* doctrine. They claim without immediate appeal they will forever lose the opportunity to avoid the costs and risks of trial and protracted litigation. Despite the potential accuracy of this assertion, a broadly worded rule allowing review of denied settlements under the *Cohen* doctrine would burden appellate courts with the threat of successive appeals and interfere intolerably with the discretion of trial courts. We decline to adopt such a rule in the absence of constitutional or congressional intent. The denial order is not appealable under the collateral order exception.

## II

■ Utah and Kennecott next contend this court's "practical rather than technical construction" of § 1291 finality is broad enough to include their appeal. The doctrine has lived a checkered life in both our court and the United States Supreme Court, but finds its current incarnation in *Bender v. Clark,* 744 F.2d 1424 (10th Cir.1984).[7] Even where jurisdiction under the *Cohen* exception is unavailable, a practical construction of § 1291

---

7. The "practical, rather than a technical" approach was announced in *Gillespie v. United States Steel Corp.,* 379 U.S. 148, 152, 85 S.Ct. 308, 311, 13 L.Ed.2d 199 (1964), but the case was purportedly limited to its facts in *Coopers & Lybrand,* 437 U.S. at 477 n. 30, 98 S.Ct. at 2462 n. 30 ("If *Gillespie* were extended beyond the unique facts of that case, § 1291 would be stripped of all significance"). Accordingly, this circuit disavowed the practical finality concept in

light of the *Coopers & Lybrand* decision. *Daiflon, Inc. v. Bohanon,* 612 F.2d 1249, 1253 (10th Cir.1979), *rev'd on other grounds sub. nom., Allied Chemical Corp. v. Daiflon, Inc.,* 449 U.S. 33, 101 S.Ct. 188, 66 L.Ed.2d 193 (1980). The *Gillespie* decision reappeared, however, in *American Export Lines, Inc. v. Alvez,* 446 U.S. 274, 277–79 & n. 7, 100 S.Ct. 1673, 1675–76 & n. 7, 64 L.Ed.2d 284 (1980), and, four years later, practical finality was revived in *Bender.*

may generate jurisdiction through a subjective and ad hoc balancing of the interests of the parties against the policies of an unambiguous finality rule. *See Boughton v. Cotter Corp.*, 10 F.3d 746, 751–52, (10th Cir.1993) (citing 15A Wright et al., *supra* § 3913, at 464). "The critical inquiry is whether the danger of injustice by delaying appellate review outweighs the inconvenience and costs of piecemeal review." *Bender*, 744 F.2d at 1427.

■ Since *Bender* we have repeatedly stressed a narrow reading of the rule. *See Boughton*, 10 F.3d at 752 (*Bender* and its progeny must be narrowly construed and invoked only in truly "unique instances" in order to preserve the vitality of § 1291); *Quinn v. CGR*, 828 F.2d 1463, 1467 (10th Cir.1987) (*Bender* must be applied only in the "most exceptional circumstances.") The case at hand is neither unique nor exceptional. Although Utah and Kennecott raise an unsettled question of law—the standard for a trial court's review of a proposed CERCLA consent decree—the only real peril to the Appellants is the cost of extraneous litigation. The magnitude of this interest alone does not overcome the policies of a finality requirement. *See* 15A Wright et al., *supra* § 3913, at 473 (cost of a wasted proceeding does not justify immediate appeal). The order denying Appellants' proposed consent decree does not fall within the narrow scope of the *Bender* exception.

### III

Utah and Kennecott lastly contend the order is appealable as an interlocutory order that grants or denies injunctive relief. *See* 28 U.S.C. § 1292(a)(1). Generally, two strands of analysis have developed for § 1292(a)(1) appeals. The first applies to orders ruling on express motions for injunctive relief and the second applies to orders with the "practical effect" of granting or refusing an injunction. *MAI Basic Four, Inc. v. Basis, Inc.*, 962 F.2d 978, 982 (10th Cir.1992) (citing *Tri–State Generation & Transmission Ass'n v. Shoshone River Power, Inc.*, 874 F.2d 1346, 1351 (10th Cir.1989)).

An interlocutory order expressly denying or granting an injunction fits squarely within the plain language of § 1292(a)(1) and need not make the additional showings required in the second strand of analysis. *Tri–State Generation*, 874 F.2d at 1351. Utah and Kennecott acknowledge that no express motion for injunctive relief is pending, and focus their argument on the strand recognizing the appeal of orders with the "practical effect" of granting or denying injunctive relief.

■ In *Carson v. American Brands, Inc.*, 450 U.S. 79, 101 S.Ct. 993, 67 L.Ed.2d 59 (1981), the Court examined an appeal from an order refusing to approve a class settlement and proposed consent decree to a Title VII claim of racial discrimination. The settlement would have required the employer to prospectively give hiring and seniority preferences to black employees. Even though the order did not specifically deny an injunction, the Court found the denial of inherently prospective relief had the "practical effect" of refusing an injunction. *Id.* at 83, 101 S.Ct. at 996. For appellate jurisdiction, *Carson* requires the challenged order have (1) "the practical effect of refusing [or granting] an injunction," (2) threaten a " 'serious, perhaps irreparable, consequence,' " and be (3) " 'effectually challenged' " only by immediate appeal. *Id.* at 84, 101 S.Ct. at 996–97 (citation omitted); *United States v. Colorado*, 937 F.2d 505, 507–08 (10th Cir.1991).

■ Utah and Kennecott cannot sustain the first requirement. Missing from the consent decree is any equitable or prospective relief, injunctive or otherwise. The Appellants erroneously state the order has the substantive effect of granting an injunction because it "mandates inclusion of a covenant to protect." *See United States v. Jones & Laughlin Steel Corp.*, 804 F.2d 348, 351 (6th Cir.1986) (where the district court conditioned entry of a consent decree on inclusion of specific court-defined terms, jurisdiction under § 1292(a)(1) proper to review the order). A careful reading of the order shows only the court's analysis of deficiencies in the settlement.[8] The order does not affirmatively demand the inclusion of specific terms in subsequent consent decree proposals.

---

8. The proposed Consent Decree also does not address what will have to be done to manage

and contain the existing contaminated waters, such as pumping water or other measures de-

Hence, the order is not appealable under the § 1292(a)(1) statutory exception as an order granting or denying an injunction.

### CONCLUSION

Denial of Utah and Kennecott's proposed settlement of CERCLA natural resource damages is not appealable as a *Cohen* collateral order, a § 1292(a)(1) interlocutory order, or under the pragmatic finality doctrine. Consequently, we grant the District's motion to dismiss for lack of jurisdiction.

**DISMISSED.**

signed to "protect" uncontaminated waters from the damaged resource. In this regard, the proposed Consent Decree contains no provision requiring measures to be taken to minimize future expansion of the existing plumes, or to assure that the contamination will not spread beyond the MIA.
801 F.Supp. at 570 (footnote omitted).