**Ramon BACA–PRIETO,**
**Petitioner–Appellee,**

v.

**Al GUIGNI, District Director (El Paso District), Immigration and Naturalization Service, Respondent–Appellant.**

No. 94–2256.

United States Court of Appeals,
Tenth Circuit.

Sept. 11, 1996.

Melvyn D. Baron of Melvyn D. Baron & Associates, P.C., Albuquerque, NM, for Petitioner–Appellee.

David J. Kline, Assistant Director, Nelda C. Reyna, Office of Immigration Litigation, Civil Division, U.S. Department of Justice, Washington, DC, for Respondent–Appellant.

Before TACHA, ALDISERT,* and BALDOCK, Circuit Judges.

BALDOCK, Circuit Judge.

Petitioner commenced this hybrid action for habeas, declaratory, and injunctive relief to challenge an order of deportation issued by the Immigration and Naturalization Service (INS) in exclusion proceedings. The thrust of petitioner's complaint is that the INS erred in deeming his return to the United States from Mexico in February 1988 an "entry" within the compass of 8 U.S.C § 1101(a)(13),[1] and, as a result, improperly treated his case as one of exclusion rather than deportation.[2] In a summary order, the

---

* Honorable Ruggero J. Aldisert, Senior Circuit Judge, United States Court of Appeals for the Third Circuit, sitting by designation.

1. All statutory citations herein are to the provisions of the Immigration and Nationality Act in effect in 1988, when petitioner unsuccessfully sought admission to this country. *See generally* Pub.L. No. 101–649, § 601(e)(1), 104 Stat. 4978, 5077 (1990)(later amendments to Act's exclusion provisions "apply to individuals entering the United States on or after June 1, 1991").

2. "An alien excluded from the United States, unlike one who has been admitted, possesses extremely limited constitutional rights, and the procedures for exclusion ... are correspondingly less thorough than those for deportation." *Marczak v. Greene,* 971 F.2d 510, 512 n. 3 (10th Cir.1992). Important substantive and procedural differences between exclusion and deportation are detailed in *Landon v. Plasencia,* 459 U.S. 21, 25–27, 103 S.Ct. 321, 325–26, 74 L.Ed.2d 21 (1982), and summarized in *Dhine v. Slattery,* 3 F.3d 613, 617 (2d Cir.1993). To avoid potential confusion, we note that although excluded aliens are also expelled by means of a "deportation" order, "in this context, deportation is a synonym for expulsion, rather than a term referring only to the procedures undergone by aliens who have entered the country." *Marczak,* 971 F.2d at 512 n. 3; *see Leng May Ma v. Barber,* 357 U.S. 185, 187, 78 S.Ct. 1072, 1073–74, 2 L.Ed.2d 1246 (1958).

district court granted a writ of habeas corpus, "permanently enjoined [the respondent district director] from removing the Petitioner from the United States under the present order in exclusion proceedings[,]" and "remanded to the Immigration Judge for a determination whether or not there was an entry by Petitioner in accordance with the Immigration and Nationality Act and whether or not [the IJ] has jurisdiction in exclusion proceedings." Appellant's Appendix (App.) at 1–2. The district director now appeals that order.[3] For reasons explained below, we reverse and remand with directions for the district court (1) to affirm the challenged order of deportation and (2) to conduct further proceedings, if necessary, in connection with a pending application for adjustment of status, consideration of which had been obviated by the district court's appealed ruling.

## I

Before we address the substance of the district court's order, we must resolve a jurisdictional issue raised by petitioner in a motion to dismiss this appeal. As petitioner points out, this circuit follows the prevailing view that a district court order remanding an action to an administrative agency for further proceedings is generally considered a nonfinal decision and, as such, not subject to immediate review in the court of appeals. *See, e.g., Cotton Petroleum Corp. v. United States Dep't of Interior*, 870 F.2d 1515, 1522 (10th Cir.1989). Because that is, in essence, what the district court did here,[4] petitioner contends we must dismiss the district director's appeal for lack of jurisdiction.

While this circuit follows the administrative-remand rule, we have also recognized "that this general proposition is not to be applied if it would violate basic judicial principles." *Bender v. Clark*, 744 F.2d 1424, 1427 (10th Cir.1984). "[P]articularly in situations where it is clearly urgent that an important issue ... be decided ... [and] justice may require immediate review, a balancing approach should be followed.... The critical inquiry is whether the danger of injustice by delaying appellate review outweighs the inconvenience and costs of piecemeal review." *Id.; see Cotton Petroleum*, 870 F.2d at 1522. It is especially significant in this regard that, "because the [agency] ... has no avenue for obtaining judicial review of its *own* administrative decisions, it may well be foreclosed from again appealing the district court's determination at any later stage of this proceeding." *Bender*, 744 F.2d at 1428; *see also Boughton v. Cotter Corp.*, 10 F.3d 746, 752 (10th Cir.1993)(*Bender* "relied heavily on our belief that a refusal to take jurisdiction would have foreclosed future appellate scrutiny"). Such considerations, sometimes loosely associated with the far broader "practical finality" doctrine of *Gillespie v. U.S. Steel Corp.*, 379 U.S. 148, 85 S.Ct. 308, 13 L.Ed.2d 199 (1964), *see Utah ex rel. Utah State Dep't of Health v. Kennecott Corp.*, 14 F.3d 1489, 1495 & n. 7 (10th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 197, 130 L.Ed.2d 129 (1994), have been invoked to permit review of precisely the sort of INS remand order we consider here. *See, e.g., Arauz v. Rivkind*, 845 F.2d 271, 274 & n. 3 (11th Cir.1988); *Kaho v. Ilchert*, 765 F.2d 877, 880–81 (9th Cir.1985).

---

**3.** After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.

**4.** Although accompanied by references to a permanent injunction and writ of habeas corpus (both ordinarily subject to immediate appeal), the effect of the district court's disposition is simply to vacate the INS order and remand for reconsideration. Redundantly securing this objective by "enjoining" enforcement of the nullified deportation order does not change the interlocutory character of the court's disposition, nor

does accomplishing the objective through the nominal means of a habeas writ, as prescribed by 8 U.S.C. § 1105a(b), vitiate the finality principles controlling the analysis here, *see Pierre v. Rivkind*, 825 F.2d 1501, 1504 (11th Cir.1987)(applying administrative-remand principles in § 1105a(b) habeas case); *see also Marshall v. Lansing*, 839 F.2d 933, 940–41 & n. 9 (3d Cir.1988)(applying same principles to determine finality of order granting habeas writ and remanding for further proceedings before parole commission). Thus, though we deem the district court's decision appealable for reasons explained above, we do not rely on either 28 U.S.C § 1292(a)(1) or 28 U.S.C. § 2253.

On several recent occasions, this court has commented on the "checkered life" led by *Gillespie* "in both our court and the United States Supreme Court," and openly questioned whether its doctrine of practical finality is "still viable." *Stubblefield v. Windsor Capital Group,* 74 F.3d 990, 996 (10th Cir. 1996); *Albright v. UNUM Life Ins. Co.,* 59 F.3d 1089, 1093 (10th Cir.1995); *Kennecott Corp.,* 14 F.3d at 1495–96. Thus far, however, case-specific considerations have obviated any definitive pronouncements regarding the vitality of the *Gillespie* doctrine. The same is true here, where our analysis is controlled by a line of authority at once more restrictive and more robust than *Gillespie* and its progeny.

None of our cases questioning the broad rule of *Gillespie* involve appellate jurisdiction in the context of agency review—where this court has developed a particular form of practical finality independently of *Gillespie* and specifically as a prudential limitation on the administrative-remand rule. *Compare Cotton Petroleum,* 870 F.2d at 1522 *and Bender,* 744 F.2d at 1427–28 *with Stubblefield,* 74 F.3d at 996 (appeal from order vacating judgment pursuant to challenged settlement) *and Albright,* 59 F.3d at 1093 (appeal from partial summary judgment) *and Kennecott Corp.,* 14 F.3d at 1495–96 (appeal from order denying proposed consent decree). Further, these decisions had no occasion to note the Supreme Court's relatively narrow administrative-remand decision in *Sullivan v. Finkelstein,* 496 U.S. 617, 110 S.Ct. 2658, 110 L.Ed.2d 563 (1990), which held—without relying on *Gillespie*—that a district court order reversing a social security disability determination and remanding for further administrative proceedings is immediately appealable by the Secretary. Among the pertinent considerations cited by *Finkelstein* was the by now familiar concern, peculiar to administrative-remand cases, that "should the Secretary on remand undertake the inquiry mandated by the District Court and award benefits, there would be grave doubt ... whether he could appeal his own order." *Id.* at 625, 110 S.Ct. at 2664.

Other circuits have relied on *Finkelstein* to support the appealability of administrative remands outside the social security disability context. *See, e.g., Travelstead v. Derwinski,* 978 F.2d 1244, 1248 (Fed.Cir.1992)("Although the specific holding of *Finkelstein* is limited to appeals under § 405(g) of the Social Security Act, we do not find its precedential effect so limited."); *Bridge v. United States Parole Comm'n,* 981 F.2d 97, 101–02 (3d Cir.1992); *St. Francis Medical Ctr. v. Sullivan,* 962 F.2d 1110, 1114 (3d Cir.1992). All of these cases echo the emphasis this court placed in *Bender* on the need "to ensure that the court of appeals was able to review an important legal question which the remand made effectively unreviewable." *Travelstead,* 978 F.2d at 1249; *see Bridge,* 981 F.2d at 102; *St. Francis,* 962 F.2d at 1114.

In light of the special relevance, both historical and analytical, of practical finality considerations in the administrative-remand context, illustrated by *Bender* and *Cotton Petroleum* and supported by *Finkelstein* and subsequent cases, we do not deem the recent criticism of the *Gillespie* doctrine pertinent here. We therefore consider ourselves bound to apply the controlling circuit precedent in this area. *See generally Finley v. United States,* 82 F.3d 966, 974 (10th Cir. 1996). Accordingly, we hold that the remand order issued herein, which, as explained in part II below, effectively decided an important legal issue regarding INS exclusion jurisdiction and directed the IJ to follow that decision in remand proceedings from which the INS would have no appeal, is subject to immediate review under *Bender. Cf. Arauz,* 845 F.2d at 274; *Kaho,* 765 F.2d at 881.

II

On the merits, the facts are not in dispute. Petitioner, a Mexican citizen, entered this country illegally in 1980, and later married a United States citizen. In 1985, after his wife filed an immigrant visa petition on his behalf, he applied for permanent resident status. In December 1985, petitioner traveled to the United States Consulate in Mexico for an interview on the immigrant visa, which was issued based on his marriage. Upon his return, however, petitioner misrepresented himself as a lawful permanent resident and was held up by immigration officials, to

whom he admitted, under oath, that his marriage was a sham entered into for immigration purposes. The INS consequently revoked his immigrant visa for fraud. After returning briefly to Mexico, petitioner illegally reentered the United States.

In 1986, petitioner divorced his first wife and remarried, once again to a United States citizen, who subsequently petitioned for an immigrant visa on his behalf. In February 1988, petitioner returned to the United States Consulate in Mexico for another visa interview. This time he was advised that he was excludable based on his earlier fraud and that he would have to obtain a waiver of such condition before he could be considered for an immigrant visa. Petitioner applied for the requisite waiver, but then attempted to reenter the United States before a decision had been made on the application. He was, accordingly, denied formal admission, and only paroled into the United States for humanitarian reasons. The INS eventually denied his waiver application and instituted exclusion proceedings. The IJ ultimately found petitioner excludable as an applicant for admission without a valid immigrant visa and ordered him deported, pursuant to 8 U.S.C. § 1182(a)(20). The Board of Immigration Appeals summarily affirmed. Petitioner then commenced this action to challenge his exclusion.

■ On appeal, petitioner contends, as he did in the district court and before the IJ, that his return to the United States in February 1988 was not an entry and, hence, exclusion proceedings were inappropriate. *See generally Landon* 459 U.S. at 28, 103 S.Ct. at 327 ("only 'entering' aliens are subject to exclusion"). Petitioner relies on two alternative lines of authority to except his 1988 return from its otherwise evident inclusion within the broad definition of "entry" in 8 U.S.C. § 1101(a)(13) (entry generally includes "any coming of an alien into the United States, from a foreign port or place or from an outlying possession, whether voluntary or otherwise"). Neither is apposite.

First, petitioner invokes the *Fleuti* doctrine, an explicitly remedial gloss placed on certain language in § 1101(a)(13) by the Supreme Court in *Rosenberg v. Fleuti*, 374 U.S.

449, 459–60, 83 S.Ct. 1804, 1810–11, 10 L.Ed.2d 1000 (1963). The relevant text provides a (facially) quite limited exception to the statute's broad definition of entry: "[A]n alien having a lawful permanent residence in the United States shall not be regarded as making an entry [i.e., a reentry] ... if the alien proves ... his departure ... was not intended or reasonably to be expected by him or ... was not voluntary...." § 1101(a)(13). The *Fleuti* Court expressed its concern over this (apparently) only minor mitigation of the "harsh consequence[s] of the strict 'entry' doctrine," particularly "as they relate to resident aliens who leave the country briefly," in the following passage:

> Certainly when an alien ... who has entered the country lawfully and has acquired a residence here steps across a border and, in effect, steps right back, subjecting him to exclusion for a condition, for which he could not have been deported had he remained in the country seems to be placing him at the mercy of the sport of chance and ... meaningless and irrational hazards[.]

*Fleuti*, 374 U.S. at 460, 83 S.Ct. at 1811 (quotations omitted). Working within the interpretive space opened up by the statutory reference to intention, the Court fully effectuated what it saw as the remedial purpose of § 1101(a)(13) by holding "that an innocent, casual, and brief excursion *by a resident alien* outside this country's borders may not have been 'intended' *as a departure disruptive of his resident alien status* and therefore may not subject him to the consequences of an 'entry' into the country on his return," *id.* at 462, 83 S.Ct. at 1812 (emphasis added).

As the pertinent statutory language and both the stated objective and qualified formulation of the *Fleuti* Court reflect, this exception to entry is specifically limited to returning aliens who previously attained permanent resident status in the United States. *See Mendoza v. INS*, 16 F.3d 335, 337 (9th Cir.1994); *Kasbati v. District Director*, 805 F.Supp. 619, 621 (N.D.Ill.1992); *cf. Molina v. Sewell*, 983 F.2d 676, 680 (5th Cir.1993)(*Fleuti* exception available to returning alien, despite pending deportation proceeding, because latter "does not affect his [undisputed]

status as a permanent resident alien"). Petitioner conceded before the IJ that he has never been a permanent resident alien. App. at 21. His reliance on *Fleuti* is therefore meritless.[5]

Alternatively, petitioner invokes the "advance-parole" exception to (re)entry illustrated by such cases as *Patel v. Landon,* 739 F.2d 1455, 1457 (9th Cir.1984); and *Joshi v. District Director,* 720 F.2d 799, 801–02 (4th Cir.1983), in which *prior* assurances from the INS that an anticipated departure from and prompt return to this country would not affect an admitted alien's nonexcludable status, were specifically enforced. The short answer to this contention is that the INS did not grant petitioner an *advance* parole securing his departure to and return from Mexico in 1988. On the contrary, he left on his own and was properly denied admission on excludability grounds upon his return. That he was then permitted physical entry through ordinary parole procedures did not upgrade his status from excludable to (only) deportable. "The parole of aliens seeking admission is simply a device through which needless confinement is avoided while administrative proceedings are conducted. It was never intended to affect an alien's status...." *Leng May Ma,* 357 U.S. at 190, 78 S.Ct. at 1075. "A paroled alien is, therefore, not deemed to be within the United States and is subject to exclusion just as if he were initially appearing at the border seeking entry." *Delgado–Carrera v. United States INS,* 773 F.2d 629, 632 (5th Cir.1985); *accord Alvarez–Mendez v. Stock,* 941 F.2d 956, 961 n. 4 (9th Cir.1991)(when excludable alien is paroled into the country, "the law treats him as if he never entered the country and 'exclusion' remains the procedure for removing him"), *cert. denied,* 506 U.S. 842, 113 S.Ct. 127, 121 L.Ed.2d 82 (1992).

On its face, the summary order issued by the district court in this case appears merely to remand, noncommittally, for a determination of the entry question. At the close of our jurisdictional discussion above, however, we stated that the district court's order nevertheless "effectively decided an important legal issue concerning INS exclusion jurisdiction and directed the IJ to follow that decision [o]n remand." *Supra* part I at p. 1009. We are now in a position to explain that statement.

Petitioner's attempts to circumvent the historical fact of his 1988 (re)entry into this country are clearly legal in character, turning on the construction of statutory terms and case law principles. *See Mendoza,* 16 F.3d at 337; *see also Kapcia v. INS,* 944 F.2d 702, 705 (10th Cir.1991). Moreover, the IJ specifically addressed and expressly rejected these legal contentions in upholding the exercise of exclusion jurisdiction. *See* App. at 13–14, 20–29. Thus, when these same issues were raised in district court and the court flatly reversed petitioner's deportation order, the mandate to the IJ was unequivocal: Redetermine the entry issue without recourse to your previous interpretation of the controlling law. We therefore reject petitioner's insinuation that the district court simply remanded an insufficiently developed case for further factual proceedings and findings. *See* Appellee–Petitioner's Answer Brief at 5–6.

Finally, petitioner raises some questions concerning the treatment of a pending administrative application for adjustment of status. This matter was not addressed by the district court and has not been adequately briefed on appeal. We therefore do not reach it. We hold only that the adjudication of petitioner's immigration status was properly committed to exclusion proceedings in light of his February 1988 entry into the United States.

The judgment of the United States District Court for the District of New Mexico is

---

5. We note that Congress has imported *Fleuti*'s notion of a "brief, casual, and innocent" absence into the areas of suspension of deportation, 8 U.S.C. § 1254(b)(2), and legalization 8 U.S.C. § 1255(a)(3)(B), so that the period of "continuous physical presence" required for such benefits (extended to illegal aliens) is not affected by brief trips out of the country. *See Mendoza,* 16 F.3d at

337 & nn. 3, 4. We agree with the Ninth Circuit that in the present exclusion context, still governed by the same statutory terms construed in *Fleuti,* there has been no new "congressional mandate" and "the *Fleuti* doctrine applies [as it always has] only to lawful permanent resident aliens." *Id.* at 337.

REVERSED. The cause is REMANDED to the district court with directions to affirm the administrative order of deportation and to conduct further proceedings, if and as necessary, in connection with petitioner's application for adjustment of status.