**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 13 2001**

**PATRICK FISHER**
**Clerk**

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT
_____

JIMMIE L. MARTIN, d/b/a J & L Services;
EDDIE M. HAYNES, d/b/a Twilite
Recovery Services; MORSE'S AUTO
SALVAGE & TOW SERVICE, INC.;
LESLIE L. MORSE, SR.; JOHN W.
MORSE; ROBERT L. MORSE,

      Plaintiffs-Appellants,

v.

MARVIN V. STITES, Linn County Sheriff,
in his individual and official capacities;
MARTIN J. READ; HAROLD J. MOONEY,
JR.; CHARLES TRASK, Linn County
Board of County Commissioners, in their
individual and official capacities; DEAN
SCHOENHALS, d/b/a/ Northside Auto,

      Defendants-Appellees.

No. 99-3192
(D. Kan.)
(D.Ct. No. 98-CV-2226-GTV)

_____

## ORDER AND JUDGMENT[*]
_____

Before **BRORBY**, **POLITZ**,[**] and **BRISCOE**, Circuit Judges.
_____

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, *res judicata* and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**] The Honorable Henry Politz, United States Circuit Judge for the Fifth Circuit, sitting by designation.

We must decide on appeal whether county established towing policies are preempted by federal law. The district court denied plaintiffs' motions for preliminary injunction and partial summary judgment on the federal preemption issue and granted defendants' motion for partial summary judgment on the same issue, holding the sheriff's policies are not preempted by § 14501(c) of the Interstate Commerce Commission Termination Act ("ICCTA"). The district court subsequently denied plaintiff's motion for reconsideration. Plaintiffs appeal the district court's rulings on the issue of federal preemption. We affirm.

FACTUAL BACKGROUND

Mr. Martin, Mr. Haynes and the Morses (collectively "Towing Companies") are Linn County, Kansas, tow truck operators. They sued Sheriff Stites and members of the Linn County Board of Commissioners ("Commissioners") for violation of the Interstate Commerce Commission Termination Act, 49 U.S.C. § 14501(c)(1).[1] Section 14501(c)(1) expressly preempts state and municipal laws, regulations or provisions "having the force and effect of law" that regulate the

_____

[1] Mr. Martin, Mr. Haynes and the Morses brought suit in the district court alleging Sheriff Stites and the Commissioners violated anti-trust, civil rights, and federal preemption laws. The summary judgment order appealed here deals only with the preemption claim. Mr. Schoenhals, a private tow operator and owner of Northside Auto, is also a defendant in the case, but is not involved in the federal preemption issue in this appeal.

prices, routes or services provided by towing companies. The Towing Companies challenge two county-wide towing policies.

The first policy was announced in December 1997, at a public Board of County Commissioners meeting. The minutes from the meeting report that as a result of an executive session, requested by Sheriff Stites to consult with counsel on a legal matter, the county "set a 60-day moratorium for towing county requested vehicles. After that 60 days, the county will only use tow services that have filed an approved application for county tows and been approved by the county commission." The sheriff, among other people, was tasked with designing an application form.

As implemented by the sheriff, this policy requires each tow operator to fill out an "Application for Permit for Towing Services for Linn County" ("permit form") in order to receive non-preference tow calls from the sheriff's department.[2] The permit form seeks personal and tow truck information, asks

_____

[2] A "non-preference tow" call is one in which the owner or operator of a disabled vehicle has no preference for a particular tow truck operator. In such an instance, the sheriff's department relays a call to a local tow truck company. If, however, the owner or operator of the disabled vehicle expresses a preference for a particular tow operator, the sheriff's dispatcher calls the requested tow truck operator.

-3-

whether the operator has current Kansas Corporation Commission authority, requests a copy of the vehicle's inspection report showing compliance with 49 CFR 396.17 - 396.23, and requires the applicant to disclose the location of the applicant's legal and properly zoned storage area for vehicles. Both the sheriff and the county commission chairman must approve and sign the permit form. Thus, the completion and approval of the permit form is a prerequisite to being put on the list to receive non-preference tow calls from the sheriff's dispatcher. However, a county-based or out-of-county operator can conduct preference tows in Linn County without completing a permit form.

The second towing policy divides the county geographically into eastern and western portions for purposes of assigning non-preference tow truck calls. In 1995, when Sheriff Stites first became sheriff, the department used a geographical division of Linn County. In 1997, Sheriff Stites changed to a pure rotation system, in which the geographic location of the towing company was irrelevant. In February 1998, however, the policy was again altered to allocate non-preference calls based on a geographic division of the county.

The minutes from the February 1998 public meeting reveal the second policy was announced following an executive session. There are no minutes from

-4-

the executive session in the record, but the minutes recorded from the regular session disclose that "[a]s a result of the executive session the commission reported that from now on towing services for the county will be split from east and west .... This arrangement will be for the county tows and non preference tows." Under the new policy, the Morses were allotted the western part of the county, while Mr. Martin, Mr. Haynes, and Mr. Shoenhal were assigned the more lucrative eastern part of the county, from which eighty percent of the non-preference tows are generated. The Towing Companies have since complained that in practice most non-preference calls are directed to Mr. Shoenhal's towing business. The Towing Companies sought declaratory and injunctive relief from the district court.

PROCEDURAL HISTORY

In order to establish our jurisdiction to review the merits of the Towing Companies' preemption claim, it is necessary to detail the procedural history of this case. The district court, after holding an evidentiary hearing, denied the Towing Companies' motion for preliminary injunction because the Towing Companies "failed to put forth evidence that Sheriff Stites' towing policy amounted to a law, a regulation, or other provision having the force and effect of law"; and therefore failed to establish the Towing Companies' substantial

likelihood of success on the merits.[3]

Subsequently, the district court ruled on the parties' cross-motions for partial summary judgment on the federal preemption issue. The district court granted the Commissioner's motion for partial summary judgment, and denied the Towing Companies' motion. In a terse order, the district court held the summary judgment papers revealed no genuine issue of material fact, and "as a matter of law, Sheriff Stites' towing policy does not amount to a law, a regulation, or other provision having the force and effect of law." While the district court did not explain its reasoning, the court apparently consolidated the two towing policies into one, and found the "towing policy," as a whole, was not preempted because there was no evidence the commission invoked its home rule authority when adopting the policy pursuant to Kansas law, K.S.A. § 19-101a.

The district court granted the parties' joint motion to certify the court's partial summary judgment rulings as a final order, pursuant to Rule 54(b). An order *nunc pro tunc* expressly limited the scope of the final order to the preemption claim.

---

[3] The district court did not explain whether the "towing policy" it referred to was the permit or the geographic division policy, or both.

The Towing Companies timely filed a "motion to reconsider" their application for preliminary injunction, motion for partial summary judgment, and the granting of defendant's motion for partial summary judgment. The district court construed the Towing Companies' motion for reconsideration as a Rule 59(e) motion to alter or amend the judgment, and denied the motion because the court found "the Linn County towing policy does not amount to a law, regulation, or other provision having the force and effect of law; therefore, it is not preempted by 49 U.S.C. § 14501."

The Towing Companies filed an interlocutory appeal to this court, and the district court stayed all other proceedings in the case. In the Towing Companies' notice of appeal, they challenge the district court's orders: 1) refusing plaintiff's motions for preliminary injunction; 2) denying plaintiff's motion for partial summary judgment; 3) granting defendants' motion for partial summary judgment; and 4) denying plaintiff's motion to reconsider.

The Towing Companies assert the towing policy is a joint policy of the commissioners and sheriff having the force and effect of law. The Towing Companies contend the policy schemes are a joint effort because the Commissioners and sheriff together promulgated the policies, the Commissioners

then enacted the policies, and the sheriff enforced them. The essence of the Towing Companies' argument is that the permit and the geographic division policies, which were coordinated efforts by the Board and the sheriff, each are a law, a regulation, or have the force and effect of law and, thus, are preempted by federal law.[4] At the outset, we should clarify that we view the geographic division and permit policies as two distinct policies that act together, and we will review them as such.

JURISDICTION

We unquestionably have jurisdiction to review the district court's denial of plaintiff's preliminary injunction pursuant to 28 U.S.C. § 1292(a)(1), which states, in relevant part, "the courts of appeals shall have jurisdiction of appeals from ... [i]nterlocutory orders of the district courts ... refusing ... injunctions." When a district court's interlocutory order expressly denies an injunction, the order "fits squarely within the plain language of 28 U.S.C. § 1292(a)(1)" and is immediately appealable. *Utah State Dep't of Health v. Kennecott Corp.*, 14 F.3d 1489, 1496 (10th Cir.), *cert. denied*, 513 U.S. 872 (1994).

---

[4] We assume the Towing Companies' counsel inadvertently violated Federal Rule of Appellate Procedure 28(a)(5) and Tenth Circuit Rule 28, by failing to include, in appellant's brief, a statement of the issues presented for review.

We have jurisdiction to review the district court's final order granting partial summary judgment to defendants under 28 U.S.C. § 1291 and Rule 54(b). The *denial* of a motion for summary judgment is generally not a final, appealable decision under 28 U.S.C. § 1291. *Lee v. Nicholl*, 197 F.3d 1291, 1297 (10th Cir. 1999); *but see Rose v. Uniroyal Goodrich Tire Co.*, 219 F.3d 1216, 1221 n.3 (10th Cir. 2000). As is the case here, however, the denial of partial summary judgment becomes appealable under 28 U.S.C. § 1291 when it is accompanied by a final order granting a cross-motion for partial summary judgment. *See Stroehmann Bakeries, Inc. v. Local 776, Int'l Brotherhood of Teamsters*, 969 F.2d 1436, 1440 (3d Cir.), *cert. denied*, 506 U.S. 1022 (1992); *see also Abend v. MCA, Inc.*, 863 F.2d 1465, 1482 (9th Cir. 1988). In this instance, the district court certified as a final order the granting of the Commissioner's cross-motion for partial summary judgment, thus giving us jurisdiction. Because we have jurisdiction to review the district court's denial of the Towing Companies' motions for preliminary injunction and partial summary judgment, and the grant of the Commissioner's partial summary judgment, we have jurisdiction to review the district court's motion for reconsideration. Having established our jurisdiction, we proceed to the merits of the case.

STANDARD OF REVIEW

"The standard of review for a denial of a motion for reconsideration depends on the nature of the underlying decision." *Johnson v. Thompson*, 971 F.2d 1487, 1498 (10th Cir.), *cert. denied*, 507 U.S. 910 (1993). In this case, the motion for reconsideration was based on the district court's preliminary injunction and partial summary judgment rulings. Although we review the district court's denial of a preliminary injunction for an abuse of discretion, the underlying preemption determination is reviewed *de novo*. *St. Thomas-St. John Hotel & Tourism Ass'n, Inc. v. Government of the United States Virgin Islands*, 218 F.3d 232, 235 (3d Cir. 2000); *see also Hawkins v. City & County of Denver*, 170 F.3d 1281, 1292 (10th Cir.), *cert. denied*, 528 U.S. 871 (1999). "An abuse of discretion occurs only when the trial court bases its decision on an erroneous conclusion of law or where there is no rational basis in the evidence for the ruling." *Hawkins*, 170 F.3d at 1292 (quotation marks and citation omitted).

We review the district court's grant of summary judgment de novo, applying the same legal standards used by that court. *Charter Canyon Treatment Ctr. v. Pool Co.,* 153 F.3d 1132, 1135 (10th Cir. 1998). Summary judgment should not be granted unless the evidence, viewed in the light most favorable to the party opposing the motion, shows there are no genuine issues of material fact and the

moving party is due judgment as a matter of law. *Id.*; Fed. R. Civ. P. 56(c).

"Where, as here, the parties file cross motions for summary judgment, we are entitled to assume that no evidence needs to be considered other than that filed by the parties, but summary judgment is nevertheless inappropriate if disputes remain as to material facts."[5] *James Barlow Family Ltd. Partnership v. David M. Munson, Inc.*, 132 F.3d 1316, 1319 (10th Cir. 1997), *cert. denied*, 523 U.S. 1048 (1998). The Towing Companies admit no material issues of fact are in dispute; our review is limited to whether the towing policies, as a matter of law, constitute a law, regulation, or have the force and effect of law.


DISCUSSION

*Preemption Principles*

The Supremacy Clause of the United States Constitution provides that the laws of the United States are "the supreme Law of the Land; ... any Thing in the

---

[5] In addition to the filed papers we will examine the oral testimony from the preliminary injunction hearing. "While the use of oral testimony on summary judgment motions is not improper, ... the determinations made in ruling on summary judgment materials and such testimony are not findings reviewable on the clearly erroneous standard of Rule 52(a), but are reviewed under Rule 56(c) to ascertain whether there is an absence of any genuine issue as to any material fact and whether the movant was entitled to judgment as a matter of law." *Riley v. Brown & Root, Inc.*, 896 F.2d 474, 477 n.5 (10th Cir. 1990). Thus, contrary to the Sheriff Stites' assertion in his brief, we do not examine the trial court's ruling under the "clearly erroneous" standard, despite the fact the trial court conducted an evidentiary hearing. *Id.* at 476.

Constitution or Laws of any state to the Contrary notwithstanding." U.S. Const. Art. VI, cl. 2. In any preemption analysis, congressional intent is the "'ultimate touchstone.'" *Tocher v. City of Santa Ana*, 219 F.3d 1040, 1045 (9th Cir. 2000) (quoting *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516 (1992)), *petition for cert. filed*, (U.S. Nov. 29, 2000) (No. 00-916). Federal law preempts state law in three circumstances: (1) Congress explicitly defines the extent to which the enacted statute preempts state law; (2) state law actually conflicts with federal law; or (3) state law attempts to regulate "conduct in a field that Congress intended the Federal Government to occupy exclusively." *Choate v. Champion Home Builders Co.*, 222 F.3d 788, 792 (10th Cir. 2000) (citing *English v. General Elec. Co.*, 496 U.S. 72, 78-79 (1990)). "Congress' enactment of a provision defining the pre-emptive reach of a statute implies that matters beyond that reach are not pre-empted." *Cipollone,* 505 U.S. at 517.

*Interstate Commerce Commission Termination Act § 14501(c)*

In 1994, Congress enacted the Federal Aviation Administration Authorization Act ("Aviation Act"), as amended by the Interstate Commerce Commission Termination Act § 14501(c), in order to deregulate the motor carrier industry nationwide. *Tocher*, 219 F.3d at 1046. Congress intended the ICCTA, like the Aviation Act, to broadly preempt state and local regulation, with an

exemption for the state's authority to regulate motor vehicle safety. 49 U.S.C. § 14501(c)(2)(A); *see R. Mayer of Atlanta, Inc. v. City of Atlanta*, 158 F.3d 538, 541 (11th Cir. 1998), *cert. denied*, 526 U.S. 1038 (1999). The ICCTA express preemption language relevant to this appeal provides:

> General Rule.– Except as provided in paragraphs (2) and (3), a State, political subdivision of a State, or political authority of 2 or more States may not enact or enforce a *law, regulation or other provision having the force and effect of law* related to a price, route, or service of any motor carrier ... with respect to the transportation of property.

49 U.S.C. § 14501(c)(1) (emphasis added). It is apparent from the plain language of the statute the threshold issue before this court is whether the two towing policies are "laws, regulations or other provisions having the force and effect of law."

The Supreme Court has shed some light, in dicta, on similar preemption language. According to the Court, "the word series 'law, ... regulation ... or other provision' ... 'connotes official, government-imposed policies, not the terms of a private contract.'" The phrase "'having the force and effect of law' is most naturally read to 'refe[r] to binding standards of conduct that operate irrespective of any private agreement.'" *American Airlines, Inc. v. Wolens,* 513 U.S. 219, 229 n. 5 (1995) (interpreting the preemption clause of the Airline Deregulation Act of 1978 which contains similar preemption language to the ICCTA). "[T]his court

-13-

considers itself bound by Supreme Court dicta almost as firmly as by the Court's outright holdings, particularly when the dicta is recent and not enfeebled by later statements." *Gaylor v. United States*, 74 F.3d 214, 217 (10th Cir.), *cert. denied*, 517 U.S. 1211 (1996). We find the Court's dicta construing the preemption clause in the Airline Deregulation Act instructive in determining whether the geographic division or the permit towing policies rise to the level of "law, regulation, or having the force and effect of law."

*Geographic Division Policy*

After reviewing the record, we hold the Towing Companies failed to show, as a matter of law, that the geographic division policy is a law, regulation, or has the force and effect of law.

The Towing Companies submitted the minutes from the Board's February 1998, regular session as evidence of the Board's participation and acquiescence in adoption of the geographic division policy. The details were sparse, but the minutes mentioned that Sheriff Stites and the Board members met in a brief executive session, and "as a result of the executive session the commission reported that from now on towing services for the county will be split from east and west." The fact the commissioners announced the adoption of the geographic

-14-

division policy after an executive session does not *de facto* establish the policy as a law or regulation or imbue the policy with the force and effect of law. In fact, it suggests the opposite conclusion because, as Chairman Read acknowledged in his deposition, the Board members are "prohibited by law from taking any action in an executive session." The Towing Companies have failed to produce evidence showing the Commissioners took any action beyond publicly announcing Sheriff Stites' policy.

Even if we assume, without deciding, the geographic policy is attributable to the Commissioners and not the sheriff, the Towing Companies still failed to show the geographic division policy rises to the requisite level of formal legislation required by K.S.A. § 19-101a. The Towing Companies suggest the Commissioners used home rule authority because Mr. Read, the Linn County Commissioner Chairman, suggested the geographic division policy was enacted by the Commissioners in a "consensus agreement" pursuant to their home rule powers. Chairman Read's testimony, however, is inconsistent because he also attributes the geographic division policy to the sheriff, rather than the Commissioners. In this case, the Chairman's statement the home rule powers were used is not dispositive because we are entitled, if not obligated, to review the Commission's actual compliance with K.S.A. § 19-101a.

-15-

Kansas law articulates precise statutory requirements for counties to pass effective legislation under the counties' home rule authority:

(a) The board of county commissioners may transact all county business and perform all powers of local legislation and administration it deems appropriate, subject only to the following limitations, restrictions or prohibitions:

....

(b) Counties shall apply the powers of local legislation granted in subsection (a) by resolution of the board of county commissioners. If no statutory authority exists for such local legislation other than that set forth in subsection (a) ..., such local legislation shall become effective upon passage of a resolution of the board and publication in the official county newspaper.

K.S.A. § 19-101a(a-b). The Towing Companies have put forth no evidence showing the Commissioners passed a resolution and published in the official county newspaper, as mandated in K.S.A. § 19-101a.

The Towing Companies assert that the Commissioner's abidance with the K.S.A. § 19-101a statutory requirements is not necessary because the Commissioners can enact a law or regulation under K.S.A. § 19-212. Specifically, K.S.A. § 19-212 states: "The board of county commissioners of each county shall have the power, at any meeting: ... Sixth. To represent the county and have the care of the county property, and management of the business and concerns of the county, in all cases where no other provision is made by law."

This provision, unlike K.S.A. § 19-101a, has no express resolution or publication requirement. The Towing Companies' argument is not persuasive.

By the plain language of the statute, K.S.A. § 19-212 is appropriately invoked by the Board of County Commissioners when managing county property and internal business. Our decision that K.S.A. § 19-212 is not applicable in this instance is supported by the Kansas Attorney General's opinion. *See Kan. Att'y Gen. Op. No. 81-146,* 1981 WL 15647 at *1 (Kan. A.G. 1981) (suggesting publication is not required when a county adopts a personnel manual for county employees). According to the Attorney General, K.S.A. § 19-212 is a "delegation[] of authority to administer [not legislate] county business; to handle its day to day affairs." *Id.* at *2. In contrast, K.S.A § 19-101a accords legislative and administrative powers, "and may be looked to primarily when exercising the general police powers of the county." *Id.* It is common sense that if a policy is to be considered an official "law" or "regulation" it must be a matter of local legislation passed pursuant to K.S.A § 19-101a, rather than a mere day-to-day administrative matter that relates to county property and business. For this reason, we hold K.S.A. § 19-212 is inapplicable, the Towing Companies made no showing the Commissioners invoked their home rule authority pursuant to K.S.A § 19-101a, and, therefore, the geographic division policy is not a law or

regulation.

The Towing Companies further failed to show the geographic division policy has the "force and effect of law." There is no evidence in the record to suggest the geographic division policy has a guideline or "standard" that binds the sheriff's conduct. *See United Airlines*, 513 U.S. at 229 n.5. For instance, the sheriff suffers no official repercussion or reprimand for violating the geographic division policy, and, in fact, there is no evidence to suggest the sheriff can not unilaterally change the policy, as he had done once in the past. The Towing Companies' contention the "county officials have acted as if the tow policy is valid" is simply insufficient to demonstrate formal regulation and control over the parties' conduct. In sum, the tow operators could still tow in the county regardless of the geographic division of the county, and nothing would happen either to the operator or to the sheriff if either party violated the policy. Thus, it is our conclusion the geographic division policy does not amount to a law, a regulation, or have the force and effect of law; accordingly, the geographic division policy is not preempted. For this reason, we affirm the district court's grant of partial summary judgment for Commissioners and affirm the district court's denial of partial summary judgment for the Towing Companies on the geographic division policy.

*Permit Policy*

The permit policy is a different creature, and presents a closer question. Before considering the merits of the towing permit policy, however, we must address whether the Towing Companies have standing to raise this claim.

To show Article III standing, a plaintiff has the burden of proving: (1) he or she suffered an "injury-in-fact," (2) a causal relationship between the injury and the challenged conduct, and (3) the injury likely will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). "'Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects.'" *Facio v. Jones*, 929 F.2d 541, 545 (10th Cir. 1991) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974)).

The Commissioners assert the Towing Companies lack standing to challenge the permit policy because the Towing Companies were not denied a regular size tow truck permit or the opportunity to perform a tow due to a lack of a permit. According to the Commissioners, the Morses in particular lack standing to challenge the denial of their large tow truck permit because they attempted to acquire a county permit on behalf of an out-of-county operator. Nevertheless, for

-19-

purposes of this opinion, we will assume, without deciding, all appellants in this case have standing to assert this claim. *See generally Gaylor v. United States*, 74 F.3d at 216. We assume the Towing Companies have standing because the record shows the Towing Companies continue to be affected by the application of the permit policy and have expressed an interest in operating a towing business or being placed on the sheriff's non-preference towing list.

On the merits, the district court held the towing policy does not, as a matter of law, amount to a law, a regulation, or have the force and effect of law. After reviewing the record, we agree with the district court that the Towing Companies have failed to show the permit policy is an "official, government-imposed policy" enacted pursuant to the county's home rule authority. *See United Airlines*, 513 U.S. at 229 n.5; *see also* K.S.A. § 19-101a.

To prove the permit policy has the force and effect of law, the Towing Companies cite to the December 1997 Board of County Commissioner's minutes. This evidence, however, is insufficient because the minutes do not show or even hint that the Commissioners passed a resolution and published in the official

county newspaper pursuant to K.S.A. § 19-101a.[6]  The minutes expressly state the county counselor "reported" a temporary moratorium on non-preference tow calls and a forthcoming permit policy.  Indeed, at the time the county counselor announced the policy, the permit form had not yet been designed.  Thus, for the same reasons the geographic policy does not constitute a law or regulation, we likewise hold as a matter of law the informal permit policy fails to amount to a law or regulation.

We are also not convinced the permit policy, as a matter of law, has the force and effect of law.  The permit form clearly requires the applicant to provide personal and tow truck information, tender a copy of the inspection report, supply the location of the storage area, and complete and sign the permit form.  After the applicant completes the form, the sheriff and county commission chairman must approve and sign the permit form before the applicant can receive non-preference calls from the sheriff's department.

_____

[6]  The record does not suggest the Commissioners passed the permit policy pursuant to a resolution.  Chairman Read testified the Commissioners enacted the policy pursuant to a "consensus agreement," but such an informal agreement made in an executive session fails to rise to a resolution, particularly in light of Chairman Read's admission the Commissioners are prohibited from taking any action in an executive session.  The December 1997 minutes, from the public meeting, fail to mention the Commissioners  passed a resolution or even voted on the permit policy.

It appears the permit form, however, is a mere formality that requires no more from the tow operators than was previously required by law. Under the permit form, the applicant must have current Kansas Corporate Commission licensing and a Department of Transportation inspection, but such requirements were already in effect before the permit form was promulgated. Moreover, the applicant must have a legal, properly zoned storage area, but Linn County had local zoning ordinances regulating the storage of impounded vehicles already in effect before the permit policy was announced. For these reasons, we conclude the permit policy is a *pro forma* application that merely consolidates the previous licensing, inspection, and storage information onto one form.

Even if the permit form is more than *pro forma*, the requirement that the sheriff and chairman approve and sign each application does not imbue the permit policy with the force and effect of law. Like the geographic division policy, it is evident the permit policy fails to articulate a "binding standard of conduct" for the sheriff or county commission chairman. *See United Airlines*, 513 U.S. at 229 n.5. Neither person suffers a repercussion if he fails to approve and sign the permit form, or violates the policy by under- or over- enforcement. Based on the absence of any evidence suggesting the permit policy imposed a binding standard of conduct on the sheriff or chairman, we hold the permit policy, as a matter of

-22-

law, does not have the force and effect of law.  Accordingly, the permit policy is not preempted by the ICCTA.

In summary, for the reasons stated, we **AFFIRM** the district court's grant of partial summary judgment for Commissioners; we **AFFIRM** the denial of the Towing Companies' partial summary judgment motion; we **AFFIRM** the denial of the Towing Companies' preliminary injunction; and we **AFFIRM** the denial of the Towing Companies' motion for reconsideration.

**Entered by the Court:**

**WADE BRORBY**
United States Circuit Judge

No. 99-3192, <u>Martin v. Stites</u>

**BRISCOE**, Circuit Judge, concurring and dissenting:

I concur in part and dissent in part. I agree with the majority that the geographic division policy implemented by Sheriff Stites does not amount to a law, regulation, or other provision having the force and effect of law, and therefore is not preempted by 49 U.S.C. § 14501(c)(1). I disagree, however, with the majority's similar assessment of the permit policy. In my view, the permit policy is preempted by § 14501(c)(1) because it has the force and effect of law and is "related to a price, route or service" of the plaintiffs. I would reverse and remand the case to the district court to determine whether, as asserted by defendants, the permit policy is saved by the safety exception set forth in § 14501(c)(2)(A).

Section 14501(c)(1) prohibits states and political subdivisions thereof from "enact[ing] or enforc[ing] . . . law[s], regulation[s], or other provision[s] having the force and effect of law related to a price, route, or service of any motor carrier . . . with respect to the transportation of property." 49 U.S.C. § 14501(c)(1). As the majority correctly observes, the threshold question in applying § 14501(c)(1) is whether the policy at issue constitutes a "law, regulation, or other provision having the force and effect of law." The policy at issue, i.e., the permit policy, was allegedly passed pursuant to a resolution of the Linn County Board of County Commissioners requiring any towing service operator contacted by sheriff's office

dispatchers to have a "permit." App. at 411 (indicating that the permit policy was enacted pursuant to the consensus agreement of the Board pursuant to the home rule powers allotted under Kansas law). It is unclear from the record whether the Board complied precisely with the terms of the Kansas home rule powers statute by publishing notice of the resolution "in the official county newspaper." Kan. Stat. Ann. § 19-101a(b). Thus, I agree with the majority that the Towing Companies have failed to show the permit policy is an official law or regulation enacted pursuant to the county's home rule authority.

The question remains, however, whether the permit policy "has the force and effect of law." In deciding this question, the majority correctly notes that the phrase "having the force and effect of law," as used in § 14502(c)(1), "is most naturally read to 'refe[r] to binding standards of conduct that operate irrespective of any private agreement.'" American Airlines, Inc. v. Wolens, 513 U.S. 219, 229 n.5 (1995) (interpreting identical phrase used in the Airline Deregulation Act of 1978). Applying this definition, the majority concludes that the permit policy does not have the force and effect of law because (1) the permit application "is a mere formality that requires no more from the tow operators than was previously required by law," Slip op. at 22, and (2) even though the sheriff and county commission chairman must approve and sign each completed application, "[n]either person suffers a repercussion if he fails to approve and sign [a

-2-

particular] permit form, or violates the policy by under- or over-enforcement."
Id. at 23.

I disagree with the majority's conclusions. Even though the majority characterizes the permit form as a "mere formality," the fact is that the permit policy imposes binding standards of conduct on towing service operators interested in receiving business from the county (i.e., non-preference calls from the sheriff's dispatchers). If towing service operators do not complete the permit form, they will lose the towing business generated by non-preference calls from the sheriff's dispatcher. Our focus in addressing § 14501(c)(1) should be upon the permit policy's effect upon the conduct of towing service operators, and not its effect upon the conduct of the sheriff and county commission chairman. By downplaying the effect of the permit policy upon towing service operators, the majority acts in contravention of the intended purpose of the Interstate Commerce Commission Termination Act (to preempt state regulation of intrastate motor carrier activities) and paves the way for other states or political subdivisions to impose their own unique procedural requirements on towing service operators or other motor carriers.

Because the permit policy, in my view, has the force and effect of law, it is expressly preempted by § 14501(c)(1) if it is "related to a price, route, or service" of the plaintiffs. There is no dispute that the permit policy does not expressly

refer to, or have a significant economic effect upon, towing service rates. It is apparent, however, that the permit policy expressly refers to towing services. On its face, the policy applies solely to towing service operators and provides that such operators must have a county-authorized permit before they are eligible to be placed on the county's referral list and receive calls for towing service from sheriff's office dispatchers. Although the permit policy does not, as pointed out by the majority, impose any new substantive standards upon towing service operators, this appears to be irrelevant for preemption purposes in light of Morales v. Trans World Airlines, Inc., 504 U.S. 374, 384 (1992) (construing in a broad fashion similar "related to" language in the Airline Deregulation Act of 1978 and holding that it results in preemption of any state or local law that has a "connection with or reference to" airline rates, routes, or services). Thus, the permit policy runs afoul of § 14501(c)(1).

Defendants assert that even if the permit policy is otherwise preempted by § 14501(c)(1), it is saved by § 14501(c)(2)(A), which provides that § 14501(c)(1) "shall not restrict the safety regulatory authority of a State with respect to motor vehicles." 49 U.S.C. § 14501(c)(2)(A). This argument raises a factual issue which requires remand to the district court. There appears to be a genuine factual dispute concerning whether the permit policy was actually implemented by the Board for safety reasons. For example, contrary to the defendants' current

-4-

assertions on appeal, defendant Read, one of the Linn County Commissioners, testified that the permit requirement was implemented solely due to concerns about the county's potential liability if it contacted and utilized a towing service that had not satisfied otherwise applicable state and federal requirements. App. at 414. Assuming, arguendo, the permit policy was adopted for safety reasons, there are also two significant legal questions that must be resolved. First, there is the question of whether § 14501(c)(2)(A)'s safety exception applies to regulations implemented by political subdivisions of a state (as opposed to regulations implemented by the state itself). There is currently a split of opinion concerning whether § 14501(c)(2) applies to laws and regulations implemented by political subdivisions of a state. Some courts have concluded that the exception applies only where the safety regulation at issue was implemented by the state itself. See R. Mayer of Atlanta, Inc. v. City of Atlanta, 158 F.3d 538, 545-46 (11th Cir. 1998) ("[W]e view Congress' omission of a reference to a state's political subdivisions from § 14501(c)(2)(A) as a manifestation of Congress' intent that municipal safety and insurance regulations are not exempted from the preemptive scope of § 14501(c)(1)."), cert. denied, 526 U.S. 1038 (1999); Petrey v. City of Toledo, 61 F. Supp. 2d 674, 680 (N.D. Ohio 1999) ("[T]he exception in § 14501(c)(2)(A) limits the authority of a state to delegate its regulatory authority over tow truck operators to local or municipal governments."). Other courts have

-5-

concluded that the exception applies to safety regulations enacted by political subdivisions if the state has delegated its safety regulatory authority to those subdivisions. See Ace Auto Body & Towing, Ltd. v. City of New York, 171 F.3d 765, 775-76 (2d Cir.) ("49 U.S.C. § 14501(c)(2)(A) does not limit the authority of a state to delegate its towing regulatory authority to local or municipal governments."), cert. denied, 528 U.S. 868 (1999); Harris County Wrecker Owners v. City of Houston, 943 F. Supp. 711, 727 (S.D. Tex. 1996) ("The court concludes that 49 U.S.C. § 14501(c)(2)(A) permits municipalities to enact safety regulations related to a price, route, or service of a tow truck if a State has redelegated its regulatory authority to its political subdivisions."). Finally, assuming, arguendo, that § 14501(c)(2) is applicable to safety regulations adopted by political subdivisions of a state, there is the question of whether the State of Kansas has delegated its towing regulatory authority to counties and other political subdivisions in the state.

While I agree with and concur in the majority's affirmance of the district court's rulings on the geographic division policy, I would reverse the district court's grant of summary judgment in favor of defendants on plaintiffs' claim that the permit policy is preempted by § 14501(c)(1) and remand for further consideration of defendants' argument that the permit policy is saved by the safety exception set forth in § 14501(c)(2)(A). For the same reasons, I would

-6-

reverse and remand the district court's denial of plaintiff's motion to preliminarily enjoin the permit policy.